# In the United States Bankruptcy Court
## For the Eastern District of Pennsylvania

| | |
|---|---|
| In re | : Chapter 7 |
| | : |
| JAMUNA REAL ESTATE, LLC | : Bankruptcy No. 04-37130 |
| UNITED MANAGEMENT SERVICES, INC. | : Bankruptcy NO. 04-37132 |
| BAGGA ENTERPRISES, INC. | : Bankruptcy No. 04-37136 |
| Debtor(s) | : |

MARVIN KRASNY, IN HIS CAPACITY AS :
CHAPTER 7 TRUSTEE OF UNITED :
MANAGEMENT SERVICES, INC.; :
MARVIN KRASNY, IN HIS CAPACITY AS :
CHAPTER 7 TRUSTEE OF JAMUNA REAL :
ESTATE LLC; GARY SEITZ, IN HIS :
CAPACITY AS CHAPTER 7 TRUSTEE OF :
BAGGA ENTERPRISES, INC. AND FL :
RECEIVABLES TRUST 2002-A :
                        :
        Plaintiffs :
                        :
     v. :
                        :
PRATPAL BAGGA; KHUSHVINDER BAGGA; :
RAVINDER CHAWLA; HARDEEP CHAWLA; :
WELCOME GROUP, INC.; K&P REAL :
ESTATE LLC; WORLD APPAREL PRODUCTS,:
INC. D/B/A/ SJM TRADING COMPANY, :
D/B/A TEN TIGERS; AMERICAN :
MERCHANDISE CO., INC., A/K/A :
AMERICAN MERCHANDISING CO.,INC.; :
21ST CENTURY RESTAURANT SOLUTIONS, :
INC.; BRAND TRADE, INC.; H.B. :
PROPERTIES, INC.; H.B. PROPERTIES : Advs. No. 06-128
LLP; SANT PROPERTIES; JOHN AND : Advs. No. 06-129
JANE DOES AND ABC COMPANIES : Advs. No. 06-130
                        :
        Defendants :

# <u>Opinion</u>

By: Stephen Raslavich, United States Bankruptcy Judge.

**Introduction**.

The Plaintiffs filed in this Court a fifteen count complaint against the debtor corporations, related entities, and their principals.  The Defendants have filed a motion to withdraw the reference of this adversary proceeding from the Bankruptcy to District Court.  The District Court has remanded the motion to the Bankruptcy Court with a limited instruction: this Court must determine to what extent the Complaint raises core versus non-core matters.[1] Upon receipt of the remand order, the parties contacted this Court to request the opportunity to brief the issues.  That request was allowed, the parties submitted briefs, and the matter was taken under advisement.[2]

*Background*

These claims had been originally brought by the creditor FL Receivables (FL) in the District Court.  There, the Defendants filed a motion to dismiss two of the counts for failure to state a claim.  That motion would be granted and as discovery was about

_____

[1]That is the extent of the District Court's directive: to determine which counts raise "core" claims and which counts raise non-core claims.

[2]*See* 28 U.S.C. § 157(b)(3) ("The *bankruptcy* judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under Title 11." (emphasis added)) Whether a proceeding is core or non-core is important in determining if the reference should be withdrawn.  *In re American Capital Equipment, LLC*, 325 B.R. 372, 377 (Bankr.W.D.Pa.2005)

2

to proceed on the remaining claims, three of the corporate
defendants—United Management, Jamuna Real Estate, and Bagga
Enterprises—filed for bankruptcy under Chapter 7.  The two
Trustees assigned to handle the cases (Messrs. Krasny and Seitz)[3]
joined with FL to file the same claims in this Court.[4]  The
Defendants filed a motion in the District Court requesting that
the reference be withdrawn. That prompted the District Court to
remand the case to this Court to determine which of the counts
are core and which are non-core.

*Core, Non-Core Proceedings*
*and Bankruptcy Court Jurisdiction*

The District Court's reference to core versus non-core
matters necessarily implicates the jurisdictional parameters of
the Bankruptcy Court.[5]  A term of art, "core" in this context
derives from the Supreme Court's ruling in *Northern Pipeline*

---

[3]Mr. Krasny is the Trustee for United and Jamuna; Mr. Seitz
serves as Trustee of Bagga Enterprises.

[4]The Court entered a Joint Prosecution Order permitting the
Trustee and FL to join as plaintiffs.  *See* Order dated August 17, 2005
filed in the main case.

[5]Title 28 provides, in pertinent part, that "the district courts shall
have original but *not exclusive* jurisdiction of all civil proceedings *arising
under* title 11, or *arising in* or *related to* cases under title 11." 28 U.S.C. §
1334(b) (emphasis added).  District Courts are therefore empowered to refer
bankruptcy matters to bankruptcy court:

> Each district court *may* provide that any or all cases
> under title 11 and any or all proceedings arising
> under title 11 or arising in or related to a case
> under title 11 shall be referred to the bankruptcy
> judges for the district.

28 U.S.C. § 157(a)(emphasis added).

*Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102
S.Ct. 2858 (1982).  There, the High Court held unconstitutional
the jurisdictional grants of the Bankruptcy Act of 1978.
Specifically, it struck down the provision which authorized
Article I bankruptcy courts to hear certain matters that
constitutionally could only be heard by courts whose judges are
protected by the safeguards in Article III.  *Id.* at 84, 102 S.Ct.
at 2878 (bankruptcy courts do not constitutionally have
jurisdiction over claims for breach of contract and
misrepresentation, [because they] involve a right created by
*state* law, a right independent and antecedent to the
reorganization petition that conferred jurisdiction upon the
Bankruptcy Court") (emphasis in original).  That ruling prompted
Congress to pass the Bankruptcy Amendments and Federal Judgeship
Act of 1984.  Under the 1984 Amendments, the

> [b]ankruptcy judges may hear and determine
> all cases under title 11 and all *core*
> proceedings arising under title 11, or
> arising in a case under title 11, referred
> under subsection (a) of this section, and may
> enter appropriate orders and judgments,
> subject to review under section 158 of this title.

28 U.S.C. § 157(b)(emphasis added).[6]  A proceeding is classified

---

[6]Core proceedings include, but are not limited to-

> (A) matters concerning the administration of the
> estate;
> (B) allowance or disallowance of claims against the
> estate or exemptions from property of the estate, and
> estimation of claims or interests for the purposes of

(continued...)

4

as "core" under 28 U.S.C. § 157 "if it invokes a substantive

right provided by title 11 or if it is a proceeding that, by its

nature, could arise only in the context of a bankruptcy case." *In

re Marcus Hook Development Park., Inc.,* 943 F.2d 261, 267 (3d

Cir.1991) (quoting *Beard v. Braunstein,* 914 F.2d 434, 444 (3d

Cir.1990)).   Core proceedings represent those disputes so

intertwined with the bankruptcy process that Congress has the

power under Article I of the Constitution to direct a non-tenured

---

[6](...continued)
      confirming a plan under chapter 11, 12, or 13 of title
      11 but not the liquidation or estimation of contingent
      or unliquidated personal injury tort or wrongful death
      claims against the estate for purposes of distribution
      in a case under title 11;
      (C) counterclaims by the estate against persons filing
      claims against the estate;
      (D) orders in respect to obtaining credit;
      (E) orders to turn over property of the estate;
      (F) proceedings to determine, avoid, or recover
      preferences;
      (G) motions to terminate, annul, or modify the
      automatic stay;
      (H) proceedings to determine, avoid, or recover
      fraudulent conveyances;
      (I) determinations as to the dischargeability of
      particular debts;
      (J) objections to discharges;
      (K) determinations of the validity, extent, or
      priority of liens;
      (L) confirmations of plans;
      (M) orders approving the use or lease of property,
      including the use of cash collateral;
      (N) orders approving the sale of property other than
      property resulting from claims brought by the estate
      against persons who have not filed claims against the
      estate;
      (O) other proceedings affecting the liquidation of the
      assets of the estate or the adjustment of the debtor-
      creditor or the equity security holder relationship,
      except personal injury tort or wrongful death claims;
      and
      (P) recognition of foreign proceedings and other
      matters under chapter 15 of title 11.

28 U.S.C. § 157(b)(2).

5

judicial officer (i.e., bankruptcy judge) to render a final
determination of their merits.  *See* 1 *Norton Bankruptcy Law and
Practice 2d,* § 4.75 (1999) ("The word 'core' was a shorthand word
employed to signify issues and actions that traditionally formed
part of the functions performed under federal bankruptcy law").

Where a matter does not qualify as "core" but has some
meaningful nexus with the bankruptcy case, it may nevertheless be
heard by the Bankruptcy Court on a preliminary basis:

> A bankruptcy judge may hear a proceeding *that
> is not a core proceeding* but that is
> *otherwise related* to a case under title 11.
> In such proceeding, the bankruptcy judge
> shall submit proposed findings of fact and
> conclusions of law to the district court, and
> any final order or judgment shall be entered
> by the district judge after considering the
> bankruptcy judge's proposed findings and
> conclusions and after reviewing de novo those
> matters to which any party has timely and
> specifically objected.

28 U.S.C. § 157(c)(1)(emphasis added).[7] The Third Circuit has
defined a "non-core" yet "otherwise related" proceeding as one
whose:

> outcome … could conceivably have any effect
> on the estate being administered in
> bankruptcy." *Pacor v. Higgins*, 743 F.2d
> 984,994 (3d Cir.1984) (emphasis omitted); *see
> In re Guild,* 72 F.3d at 1180-81. "[T]he
> proceeding need not necessarily be against
> the debtor or against the debtor's property."
> *In re Guild,* 72 F.3d at 1180-81. '" A key

---

[7]The statute does provide, however, that all parties may consent
to the Bankruptcy Court's entry of a final judgment. *See* U.S.C. §
157(c)(2)

6

> word in [this test] is conceivable.
> Certainty, or even likelihood, is not a
> requirement. Bankruptcy jurisdiction will
> exist so long as it is possible that a
> proceeding may impact on the debtor's rights,
> liabilities, options, or freedom of action or
> the handling and administration of the
> bankrupt estate. '" *Id.* at 1181 (quoting *In
> re Marcus Hook,* 943 F.2d at 264) (emphasis
> omitted).

*Halper v. Halper,* 164 F.3d 830, 837 (3d Cir.1999)(footnote

omitted).  A leading commentator opines:

> In light of the *Marathon* case, the
> legislative history surrounding the 1984
> jurisdictional provisions and the post-1984
> case law, it seems clear that civil
> proceedings encompassed by section 1334(b)'s
> ''related proceedings'' are those whose
> outcome could conceivably have an effect on
> the bankruptcy estate and that (1) involve
> causes of action owned by the debtor that
> became property of a title 11 estate under
> section 541 (as distinguished from
> postpetition causes of action, i.e., those
> that come into existence during the pendency
> of the bankruptcy case), or (2) are suits
> between third parties that ''in the absence
> of bankruptcy, could have been brought in a
> district court or a state court.''

1 *Collier on Bankruptcy* ¶ 3.01[4][c][ii] (Matthew Bender 15th Ed.

revised).  This matters for present purposes inasmuch as the

parties agree that three of the fifteen counts in the Complaint

do not raise core matters, but disagree as to whether all three

are "otherwise related" to the bankruptcies.  The Third Circuit

has explained that a bankruptcy may neither hear nor determine

matters which are both non-core and *unrelated.  See Pacor, Inc.

v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) overruled on other

7

grounds by *Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 116
S.Ct. 494, 133 L.Ed.2d 461 (1995); *see also Torkelson v. Maggio
(In re Guild and Gallery Plus, Inc.)*, 72 F.3d 1171, 1181 (3d
Cir.1996) (holding that third party's claim against trustee for
failing to account for *non*-estate property was neither core nor
related proceeding).  The Court now turns to each of the fifteen
counts to determine which raise "core" matters.  *See Halper*,
*supra*, 164 F.3d at 837 (explaining that where Court is confronted
with disparate causes of actions in determining whether core
matters raised, analysis must proceed on a claim-by-claim basis)[8]

*Counts I and II - RICO*

Counts I and II allege violations of the Racketeer
Influenced and Corrupt Organizations Act of 1984[9] (RICO).  The
parties concur that these claims are non-core, although they are
silent as to whether the claims are related.  *See* Plaintiff's
Brief, 5; Defendants' Brief, 6,7.  In any event, the question is
a legal one which means that the Court is not bound by what the
parties agree on and must make the determination on its own.
*Mintze v. American General Financial Services, Inc.*, 434 F.3d

---

[8]That does not mean, however, that the Court will analyze each
count seriatim.  Given that several counts raise the same cause of
action (albeit against different Defendants), the Court will analyze
each common cause of action as a group.

[9]18 U.S.C. § 1961 et seq.

222, 228 (3d Cir.2006) *citing Halper*, 164 F.3d at 836-37.

While there is no controlling Third Circuit law on this issue, the Seventh Circuit has observed that the weight of authority holds that a RICO claim is a non-core, related proceeding. *See Barnett v. Stern*, 909 F.2d 973, 979-80 (7th Cir.1990) (holding that RICO claims against debtor individual and debtors' son were non-core, explaining majority rule and citing cases). In this jurisdiction, the two decisions on point follow that majority rule. *See In re Schlein*, 188 B.R. 13, 14 (E.D.Pa. 1993) (granting withdrawal of reference of RICO claims against family members); *see also In re Humphreys Pest Control Co., Inc.*, 35 B.R. 712, 714 (Bankr.E.D.Pa.1984) (on creditors' motion for relief from automatic stay to proceed with district court action alleging, *inter alia,* RICO claims, bankruptcy court noted that, under the Emergency Rule [the precursor of the current jurisdictional statute enacted in response to *Marathon* ], these claims against the officers and agents of the debtor's corporation would be "related proceedings"). This Court will be guided by that authority.

In this case, the Plaintiffs have alleged RICO violations against the individual defendants. Complaint, ¶¶ 160-186. A successful outcome of either RICO count would stand to benefit these bankruptcy estate. For that reason, the Court finds that Counts I and II raise non-core, related claims.

9

*Counts III, X and XV - Piercing the Corporate Veil*

These three counts are premised on an alter ego theory.  *See Crimmins v. Arco Chemical Company*, 1999 WL 199750 * 5 (E.D.Pa.) (noting that purpose of alter ego doctrine is to prevent individuals who have acted fraudulently or unjustly from protecting themselves from liability by using the corporate form) The remedy for such offense is to disregard the corporate entity.  *See Village at Camelback Property Owners Association Inc. v. Carr*, 371 Pa. Super. 452, 460-61, 538 A.2d 528, 532-33 (1988) ("Piercing the corporate veil is a means of assessing liability for the acts of the corporation against the equity holders of the corporation.")

It is here that the parties register their first disagreement.  Despite what is alleged in the Complaint,[10] Plaintiffs now maintain that Counts III and X are core and that Count XV is neither core nor non-core.[11]  *See* Plaintiffs' Brief, 6, 9-10.  Plaintiffs argue that what is sought here is turnover

---

[10]Originally, the Plaintiffs had alleged that counts IV (Fraudulent Transfer), VI, VII and VIII (all for Turnover under 11 U.S.C. § 542) were "core" proceedings and that the remaining counts were non-core *related* proceedings.  *See* Complaint, ¶ 8.  Plaintiffs now argue that all counts except I, II and IX are core.   No explanation for this change is offered except to point out that this switch was articulated at the April 17, 2006 hearing.  *See* Defendants' Brief, 6 n.3.

[11]Plaintiffs explain that Count XV pleads a remedy as opposed to a cause of action.  See Plaintiff's Brief, 10 (stating that "it logically follows the core/non-core status of the individual causes of action").  No authority for this unorthodox practice is offered.

of diverted funds to the Debtor's estates. *Id*. 5, 9. That, they
conclude, brings the claims within the specific example of "core"
matters in § 157(b)(2). *Id*. Defendants argue that case law is
to the contrary. Claims to pierce the corporate veil are based
in common law. Defendants' Brief, 8.

The Third Circuit has observed that "actions to pierce the
corporate veil, or alter ego action against the debtor
corporation, are often considered non-core, 'related to'
proceedings." *In re Phar-mor*, *Inc.*, 22 F.3d 1228, 1239 (3d
Cir.1994) Here, the Plaintiffs alleged that the individual
defendants abused the corporate form of the debtor corporations
to defraud its creditors. *See* Complaint ¶¶ 187-202, 247-257,
273-74. The Court finds that while these claims are not "core"
matters, they have the potential to affect this bankruptcy
estate. Therefore, Counts III, X and XV are non-core, related
matters.

*Count IV - Fraudulent Transfer*

Both sides maintain that this count raises a "core" claim.
Among the illustrative examples of core proceedings in §
157(b)(2) are fraudulent transfers. *See* 28 U.S.C § 157(b)(2)(H).
In substance, Count IV alleges a classic case of both *actual* and
*constructive* fraud. It is alleged that the Baggas intentionally
siphoned off money from the debtor for their own benefit and to
the detriment of creditors. *See* 11 U.S.C. § 548(a)(1)(A);

11

Complaint ¶ 206.  Alternatively, it is alleged that this was done at a time when the Debtors were insolvent and, in exchange for which, the Debtors did not receive reasonably equivalent value. *See* 11 U.S.C. § 548(a)(1)(B); Complaint ¶ 207.  The Court thus finds the parties to be correct in classifying this count as a core proceeding.

*Count V - Conversion*

Plaintiffs argue that the conversion count raises a core claim because it is "in effect," a fraudulent transfer claim. Plaintiffs' Brief, 6.  In arguing that the claim is non-core, Defendants liken it to an alter-ego cause of action: both are based on state common law, arose prepetition, and would exist independently of bankruptcy.  Defendants' Brief, 9.

The Court takes up the Plaintiffs' premise first; to wit, that because the conversion claim is similar to the fraudulent transfer claim, it, too, should be deemed core.  Similarities between a core claim and a non-core claim do not create bankruptcy court jurisdiction over the latter claim.  *Cf. In re Kamine/Besicorp Allegany, LP*, 214 B.R. 953, 965 (Bankr.D.N.J.1999) (explaining that parties may not manufacture core jurisdiction by their actions).  To reiterate, the test for what is a core proceeding is whether the claim invokes a substantive right provided under title 11 or arises only in the context of bankruptcy.  *Halper*, 164 F.3d at 836.  The conversion

claim does neither.  This would explain, then, why the Plaintiffs adduce no authority—statutory or decisional—for this proposition.[12]  Indeed, the weight of authority is in Defendants' favor.  *See In re Windsor Comm. Grp., Inc.*, 79 B.R. 210, 211 (E.D.Pa.1987)(referencing remanded opinion wherein conversion claim deemed non-core); *In re Naturally Beautiful Nails, Inc.*, 252 B.R. 574, 576 (M.D.Fla.2000) (same); *In re Haugen*, 120 B.R. 124, 126 (D.N.D.1991) (same); *In re CIS, Inc.*, 172 B.R. 748, 758 (S.D.N.Y.1994) ("Claims asserting the unlawful conversion of property unquestionably arise under state law and are considered non-core proceedings."); *Meadowlands Comm. v. Banker's Trust Co.*, 79 B.R. 198, 200 (D.N.J.1987) (conversion action brought by debtor was non-core); *In re Reda, Inc.,* 60 B.R. 178, 181 (Bankr.N.D.Ill.1986) (same); *see also Van Dorn Retail Mgmt., Inc. v. Sovran Bank/DC National,* 1991 WL 222061 *4 n. 2 (D.D.C.) (noting in dictum that conversion claims are generally recognized as non-core).  Accordingly, the Court finds that the conversion claim is non-core.

That, however, does not end the matter.  The corollary issue raised by this ruling is whether this non-core matter is

---

[12]The Court's own research reveals one rather dated line of authority which accepts Plaintiffs' premise.  *See In re Lombard-Wall, Inc.*, 48 B.R. 986, 991 (S.D.N.Y.1985) (finding that claim in question "so logically connected" to an issue in the case "that judicial economy and fairness dictate that they be decided in the same forum.") That reasoning, however, is contrary to controlling Third Circuit authority.

"related" or not.  Curiously, Defendants never address that issue.  In any event, the Court observes that the count is brought by all Plaintiffs against Mr. Bagga.  If prosecuted successfully, this claim could positively affect the bankruptcy estate.  For that reason, the Court finds that the conversion claim is a "related" non-core claim.

*Counts VI, VII and VIII - Turnover*

These three counts are brought each by one of three Trustees against all of the Defendants.[13]  Each count alleges that certain individual defendants wrongfully transferred money of the respective corporate Debtor to the individual defendants.  Section 542 provides, in pertinent part, that "an entity … in possession, custody or control, during the case of property that the trustee may use, sell, or lease under § 363 of this title … shall deliver to the trustee, and account for, such property or the value of such property …"  11 U.S.C. § 542(a).  Although each count is styled "turnover," Defendants reject that characterization. They argue that the assets which Plaintiffs demand to be turned over are the subject of dispute between the parties.  Defendants' Brief, 12.  Therefore, their argument goes, these counts are not turnover claims.  In response, Plaintiff offers the rather circular argument that all they need to show to establish a

---

[13]Counts VI and VII are brought by Mr. Krasny as Trustee for United and Jamuna, respectively; Count VIII is brought by Mr. Seitz as Trustee for Bagga Enterprises.  *See* Complaint.

14

viable turnover claim is that the money demanded is property of the estate. Plaintiffs' Brief, 7. Do these counts raise claims for turnover?

Examination of the question whether an action is properly characterized as a turnover proceeding typically occurs in connection with a determination whether a matter is a core or non-core proceeding. *See e.g., Beard v. Braunstein,* 914 F.2d 434, 443-44 (3d Cir.1990); *see also In re Asousa Partnernership*, 264 B.R. 376, 384 (Bankr.E.D.Pa.2001)("Turnover under 11 U.S.C. § 542 is a remedy available to debtors to obtain what is acknowledged to be property of the bankruptcy estate."); *see also Creative Data Forms, Inc. v. Pennsylvania Minority Business Development Authority (In re Creative Data Forms, Inc.)*, 41 B.R. 334, 336 (Bankr.E.D.Pa.1984) ("[I]f the debtor does not have the right to possess or use the property at the commencement of the case, a turnover action cannot be a tool to acquire such rights."), *aff'd,* 72 B.R. 619 (E.D.Pa.1985), *aff'd,* 800 F.2d 1132 (3d Cir.1986) (table). Numerous courts have held that a turnover is not proper where a bona fide dispute exists. *See In re Allegheny Health Education and Research Foundation*, 233 B.R. 671, 677 (Bankr.W.D.Pa.1999) *citing U.S. v. Inslaw, Inc.,* 932 F.2d 1467, 1472 (D.C.Cir.1991) ("'It is settled law' that turnover actions under § 542 cannot be used 'to demand assets whose title is in dispute'") *see also In re 2045 Wheatsheaf Associates,* 1998

WL 910228 *10 (Bankr.E.D.Pa.) (quoting *In re Johnson,* 215 B.R. 381, 386 (Bankr.N.D.Ill.1997), to the effect that "[t]urnover under § 542 of the Code 'is not intended as a remedy to determine disputed rights of parties to property. Rather, it is intended as a remedy to obtain what is acknowledged to be property of the bankruptcy estate.'"); *In re LiTenda Mortgage Corp.*, 246 B.R. 185, 195 (Bankr.D.N.J.2000) *citing In re CIS Corp., supra*, 172 B.R. at 760) ("The terms 'matured, payable on demand, or payable on order' create a strong textual inference that an action should be regarded as a turnover only when there is no legitimate dispute over what is owed to the debtor."); *In re F & L Plumbing & Heating Co.,* 114 B.R. 370, 376-77 (E.D.N.Y.1990) (explaining that where no set fund exists and other parties may have legal rights to the monies sought, no turnover action lies); *In re Ven-Mar Intern., Inc.,* 166 B.R. 191, 192-93 (Bankr.S.D.Fla.1994) (holding that § 542 does not provide a means to recover property where a dispute exists between the parties); *In re Matheney,* 138 B.R. 541, 546 (Bankr.S.D.Ohio 1992) (stating that an action is properly characterized as one for turnover when the trustee or debtor in possession is seeking to obtain property of the debtor, not property owed to the debtor); *In re Kenston Management Co.,* 137 B.R. 100, 107 (Bankr.E.D.N.Y.1992) (holding that an action for turnover only exists if the debt has matured and is "specific in its terms as to the amount due and payable"); *In re FLR*

16

*Company, Inc.,* 58 B.R. 632, 634 (Bankr.W.D.Pa.1985) ("Implicit in the bankruptcy context of turnover is the idea that the property being sought is clearly the property of the Debtor but not in the Debtor's possession. Turnover, 11 U.S.C. § 542, is not the provision of the Code to determine the rights of the parties in legitimate contract disputes.") Do these counts involve a claim subject to dispute?

The Third Circuit has explained that a "bona fide dispute" exists only when there is "a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts." *B.D.W. Associates v. Busy Beaver Bldg. Ctrs.,* 865 F.2d 65, 66 (3d Cir.1989) (adopting standard enunciated in *In re Busick,* 831 F.2d 745, 746 (7th Cir.1987) which, in turn adopted *In re Lough,* 57 B.R. 993, 997 (Bankr.E.D.Mich.1986) with gloss: requiring that fact or legal issue in dispute be "substantial").  Applying this definition to the three counts, the Court sees that the Defendants "adamantly" dispute that they have done anything wrong or that they diverted money from the Debtors to themselves. Defendants' Brief, 12.  Thus, Plaintiffs' argument that a finding that the property sought to be turned over is property of the estate begs the question.  At this stage in the litigation, the Court does not know whether the funds sought to be recovered are (or are not) estate property.  There exists, then, a bona fide

17

dispute on that material issue which, in turn, means that the claims in Counts VI through VIII are not strictly "turnover" claims.  For that reason, the Court finds that such claims are non-core.

However, yet again, the Defendants' analysis is incomplete. Having confirmed their contention that these counts are non-core, the Court must delve further to determine if any are nonetheless "related" matters.  Count VI alleges that property of United was transferred by individual defendants to themselves and other entities with no legitimate business purpose.  Complaint ¶¶ 219-222  In Count VII, essentially the same thing is alleged as to have happened to Jamuna.  There, it is alleged that its revenues were transferred to United, among other defendants, and with no legitimate business purpose.  *Id*. ¶¶ 223-28.  Likewise, Count VIII alleges that funds which were the property of Bagga Enterprises were improperly transferred to other defendants.  *Id*. ¶¶ 230-35.  Should all or part of those transferred funds be recovered, the respective estate would be affected in a positive manner.  Therefore, the Court finds that Counts VI, VII and VIII are "related", non-core matters.

*Count IX - Fraud*

This count raises a claim under the Pennsylvania common law of fraud in the inducement.  *See Eigen v. Textron Lycoming Reciprocating Engine Div.,* 874 A.2d 1179, 1185 (Pa.Super.2005)

(listing the elements of fraud in the inducement as : (1) a
representation; (2) which is material to the transaction at hand;
(3) made falsely, with knowledge of its falsity or recklessness
as to whether it is true or false; (4) with the intent of
misleading another into relying on it; (5) justifiable reliance
on the misrepresentation; and (6) the resulting injury was
proximately caused by the reliance.)   The Baggas are alleged to
have intentionally made materially false representations to
induce FL's predecessor in interest to loan them money.
Complaint, ¶¶ 239-43.   That lender justifiably relied on false
financial statements to its detriment.  *Id.*  ¶¶244-46.

While both parties agree that this count is non-core, they
disagree on whether it is a "related" claim.   Plaintiffs maintain
that the fraud claim is non-core but "related" for two reasons:
first, it is "factually related" to the core fraudulent transfer
claim; and, second, under the Joint Prosecution Order, any
recovery will inure to the benefit of the bankruptcy estate.
Plaintiffs' Brief, 8.   Defendants maintain that this count is
wholly unrelated to the case as it is brought by FL on its own
behalf only and does not involve the Trustee plaintiffs.
Defendants' Brief, 9.

Plaintiffs' first argument—that there is commonality between
the fraud and the fraudulent transfer claims sufficient to render
the former "related"— is as unsuccessful here as it was when

19

raised in support of the argument that the conversion claim was

core.  The same can be said, however, for Defendants' argument;

to wit, that the Trustee must be one of the litigants for a

bankruptcy court to have even "related to" jurisdiction.  What

matters, the Third Circuit explained in *Pacor*, is

> whether the outcome of that proceeding could
> conceivably have any effect on the estate
> being administered in bankruptcy. *E.g., In re*
> *Hall,* 30 B.R. at 802; *In re General Oil*
> *Distributors, Inc.,* 21 B.R. 888, 892 n. 13
> (Bankr.E.D.N.Y.1982); *In re U.S. Air Duct*
> *Corp.,* 8 B.R. 848, 851 (Bankr.N.D.N.Y.1981);
> 1 *Collier on Bankruptcy* ¶ 3.01 at 3-49. Thus,
> the proceeding need not necessarily be
> against the debtor or against the debtor's
> property.  An action is related to bankruptcy
> if the outcome could alter the debtor's
> rights, liabilities, options, or freedom of
> action (either positively or negatively) and
> which in any way impacts upon the handling
> and administration of the bankrupt estate.

743 F.2d at 994.  This reveals as persuasive Plaintiffs' second

argument; to wit, that the Joint Prosecution Order will affect

this bankruptcy estate.  If prosecuted successfully, the fraud

claim would positively affect these bankruptcy estates.  For that

reason, the Court finds that Count IX is a non-core proceeding

which is related to these bankruptcy estates.

*Counts XI through XIV - Breach of Fiduciary Duty*

Counts XI through XIV allege four instances of fiduciary

misfeasance and/or assisting or abetting such conduct.  Certain

individual defendants—*qua* fiduciaries—are accused of unjustly

enriching themselves at the Debtors' expense.  *See* Count XI.  Mr.

20

and Mrs. Bagga are alleged to have stripped assets from their
companies, including the Debtors.  *See* Count XII.  At the same
time, they are charged with causing Bagga Enterprises and Jamuna
Real Estate to become even more insolvent.  *See* Count XIII.
Finally, those individual defendants not fiduciaries are supposed
to have aided or abetted those who were as the latter violated
their oaths.  *See* Count XIV.  Each of these counts states a claim
under Pennsylvania law.  *See Westlake Plastic Co. v. O'Donnell*,
182 F.R.D. 165, 171 (E.D.Pa.) (observing that self-dealing is an
example of a breach of fiduciary duty citing 15 Pa.C.S.A. § 512);
*In re Specialty Tape Corp.*, 132 B.R. 297, 301 (Bankr.W.D.Pa.1991)
(holding that former officers-directors breached their fiduciary
duty to the debtor when they transferred the debtor's assets,
including equipment that deprived the debtor from servicing its
customers and deriving income, to a corporation of which they
were also officers and directors; *Official Committee of Unsecured
Creditors v. R.F. Lafferty & Co.,* 267 F.3d 340, 349 (3d Cir.2001)
("[W]e conclude that, if faced with the issue, the Pennsylvania
Supreme Court would determine that 'deepening insolvency' may
give rise to a cognizable injury."); *Koken v. Steinberg*, 825 A.2d
723, 732 (Pa.Comwlth 2003) *citing Pierce v. Rossetta Corp.*, 1992
WL 165817 *8 (E.D.Pa.1992) (listing elements for a claim for
aiding and abetting breach of a fiduciary duty under Pennsylvania
law as: (1) a breach of a fiduciary duty owed to another; (2)

21

knowledge of the breach by the aider and abettor; and (3)

substantial assistance or encouragement by the aider and abettor

in effecting that breach).  That takes the Court to the primary

question: are these counts core or non-core?

As with the conversion and fraud counts, Plaintiffs'

argument that Counts XI through XIV are core is made by

association.  The breach of fiduciary duty claims, say the

Plaintiff, are "factually related" to the fraudulent transfer and

turnover claims.  Plaintiff's Brief, 10.  For their part,

Defendants raise the same argument as they did towards the

conversion and fraud counts: the claims arise under state statute

and common law and preceded the bankruptcy.  Defendant's Brief,

9,10. [14]

While the Third Circuit has not had occasion to decide

whether such claims are core or not, the majority of courts which

addressed the question have held that a cause of action for

breach of fiduciary duty is a non-core, related proceeding.  *See

Diamond Mort. Corp. v. Sugar*, 913 F.2d 1233, 1239 (7th Cir. 1990);

*In re Cannon*, 277 F.3d 838, 846 (6th Cir.2002); *McCord v.

Papantoniou (In re Papantoniou)*, 316 B.R. 113, 121 (E.D.N.Y.

2004); *In re Delaware & Hudson Rwy*, 122 B.R. 887, 894

(D.Del.1991); *Johnson v. State Farm Mut. Ins. Co., (In re

---

[14]Here, again, Defendants do not specify whether the non-core
claims are related or not.

*Guenther)*, 65 B.R. 650, 651  (Bankr.D.Colo.1986); *In re Michigan REIT*, 87 B.R. 447, 453 (E.D.Mich. 1988); *In re SRC Holding Corp.*, 352 B.R. 103, 166 (Bankr.D.Minn.2006); *In re 4 Front Petroleum, Inc.*, 345 B.R. 744, 750 (Bankr.N.D.Okla.2006); *Allen v. J.K. Harris & Co.,* 331 B.R. 634, 641 (E.D.Pa.2005) *but see contra Glinka v. Abram and Rose Co., Ltd.*, 1994 WL 905714 *8 (D.Vt.) This Court has previously held with the majority.  *See Eagle Enterprises, Inc.*, 259 B.R. 83, 87-88 (Bankr.E.D.Pa.2001) (finding in abstention context that breach of fiduciary duty claims are non-core related).

Without question, these claims cannot be said to invoke a substantive right provided by title 11 or to arise only in the context of a bankruptcy.  Thus, they are not "core" claims. However, what can be said with certainty is that if the Plaintiffs prevail on these counts, the estate stands to benefit. Accordingly, this Court concludes that these counts raise "non-core, related" matters.

*Conclusion*

The Court makes the following determination as to the core/non-core status of each of the fifteen counts of the Complaint: Counts I, II, III, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, and XV are non-core, related claims.  Count IV is a

23

core proceeding.[15]

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated:    <u>December 20, 2006</u>

---

[15] This ruling is specifically limited to the precise directive
set forth in the District Court's Remand Order.  The Court was not
asked or directed by the District Court to opine on the other issues
which the parties in their written submissions have asked the Court to
discuss.  Under the circumstances the Court believes it would be
inappropriate to unilaterally go beyond the issue referred to it.
Accordingly, the Court declines to address other issues raised by the
parties in their briefs concerning the motion for withdrawal of the
reference pending in the District Court.

**In the United States Bankruptcy Court
For the Eastern District of Pennsylvania**

```
In re                          : Chapter 7
                               :
JAMUNA REAL ESTATE LLC         : Bankruptcy No. 04-37130
UNITED MANAGEMENT SERVICES, INC. : Bankruptcy NO. 04-37132
BAGGA ENTERPRISES, INC.        : Bankruptcy No. 04-37136
            Debtor(s)          :
_____ :
                               :
MARVIN KRASNY, IN HIS CAPACITY AS :
CHAPTER 7 TRUSTEE OF UNITED     :
MANAGEMENT SERVICES, INC.;      :
MARVIN KRASNY, IN HIS CAPACITY AS :
CHAPTER 7 TRUSTEE OF JAMUNA REAL :
ESTATE LLC; GARY SEITZ, IN HIS  :
CAPACITY AS CHAPTER 7 TRUSTEE OF :
BAGGA ENTERPRISES, INC. AND FL  :
RECEIVABLES TRUST 2002-A        :
                               :
            Plaintiffs          :
                               :
        v.                      :
                               :
PRATPAL BAGGA; KHUSHVINDER BAGGA; :
RAVINDER CHAWLA; HARDEEP CHAWLA; :
WELCOME GROUP, INC.; K&P REAL   :
ESTATE LLC; WORLD APPAREL PRODUCTS,:
INC. D/B/A/ SJM TRADING COMPANY, :
D/B/A TEN TIGERS; AMERICAN      :
MERCHANDISE CO., INC., A/K/A     :
AMERICAN MERCHANDISING CO.,INC.; :
21ST CENTURY RESTAURANT SOLUTIONS, :
INC.; BRAND TRADE, INC.; H.B.   :
PROPERTIES, INC.; H.B. PROPERTIES : Adv.No. 06-00128
LLP; SANT PROPERTIES; JOHN AND  : Adv.No. 06-00129
JANE DOES AND ABC COMPANIES     : Adv.No. 06-00130
                               :
            Defendants          :
_____ :
```

## <u>Order</u>

**And Now,** in accordance with the District Court's Order dated

October 6, 2006, it is hereby:

**Ordered**, that Counts I, II, III, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, and XV of this adversary proceeding are non-core, related claims.  Count IV is a core proceeding.

By the Court:

_____
Stephen Raslavich
Dated:  <u>December 20, 2006</u>      United States Bankruptcy Judge

2

Interested Parties:

George Conway, Esquire
Office Of The U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia PA  19106

Counsel for Plaintiffs

Lawrence J. Tabas, Esquire
OBERMAYER REBMAN MAXWELL & HIPPEL LLP
One Penn Center, 19th Fl.
1617 JFK Blvd
Philadelphia, PA 19103

Christopher F. Graham, Esquire
THATCHER PROFFIT & WOOD LLP
50 Main Street
White Plains, NY 10606

Counsel for Defendants

Richard M. Simins, Esquire
Jami B. Nimeroff, Esquire
BUCHANAN INGERSOLL & ROONEY PC
1835 Market Street, 14th Fl
Philadelphia, PA 19103-2985

Andrew Teitelman, Esquire
380 Red Lion Road, Ste 202
Huntingdon Valley, PA 19006