## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE                                : CHAPTER 7
                                     :
JAMUNA REAL ESTATE, LLC              : BANKRUPTCY NO. 04-37130
UNITED MANAGEMENT SERVICES, INC.     : BANKRUPTCY NO. 04-37132
BAGGA ENTERPRISES, INC.              : BANKRUPTCY NO. 04-37136
                          DEBTORS    :
_____     :

MARVIN KRASNY, IN HIS CAPACITY AS    :
CHAPTER 7 TRUSTEE OF UNITED          :
MANAGEMENT SERVICES, INC.;           :
MARVIN KRASNY, IN HIS CAPACITY AS    :
CHAPTER 7 TRUSTEE OF JAMUNA REAL     :
ESTATE LLC; GARY SEITZ, IN HIS CAPACITY :
 AS CHAPTER 7 TRUSTEE OF BAGGA       :
 ENTERPRISES, INC., WILMINGTON TRUST :
COMPANY IN ITS CAPACITY AS  OWNER    :
TRUSTEE OF FL RECEIVABLES TRUST 2002-A :
 AND FL RECEIVABLES TRUST 2002-A     :
                          PLAINTIFFS :
                    V.               :
PRATPAL BAGGA; KHUSHVINDER BAGGA;    :
RAVINDER CHAWLA; HARDEEP CHAWLA;     :
WELCOME GROUP, INC.; K&P REAL        :
ESTATE LLC; WORLD APPAREL PRODUCTS,  :
INC. D/B/A/ SJM TRADING COMPANY,     :
D/B/A TEN TIGERS; AMERICAN MERCHANDISE :
CO., INC., A/K/A AMERICAN MERCHANDISING :
CO.,INC.; 21ST CENTURY RESTAURANT    :
SOLUTIONS, INC.; H.B. PROPERTIES, INC. : ADV NO. 06-128
H.B. PROPERTIES LLP; SANT PROPERTIES; : ADV NO. 06-129
JOHN AND JANE DOES AND ABC COMPANIES : ADV NO. 06-130
                          DEFENDANTS :
_____

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

Before the Court is the Plaintiffs' Motion for Leave to Amend, or in the

Alternative, for the Entry of Judgment Pursuant to F.R.C.P. 54(b) and B.R. 7054.  The

Motion is opposed by Defendants Ravinder and Hardeep Chawla.  After hearing, the

Court took the matter under advisement.

*Summary of Holding*
*as to Leave to Amend*

While the proposed Second Amended Complaint pleads a total of ten counts,

only five are directed at one (or more) of the Chawla Defendants: Count I (RICO[1]);

Count II (conspiracy to violate RICO); Count IV (fraud and conspiracy to defraud);

Count VIII (aiding and abetting a breach of fiduciary duty); and Count IX (fraudulent

transfer).  As to these counts the Court rules as follows:

> Count I - RICO (Plaintiffs against Pratpal Bagga, Khushvinder Bagga and
> Ravinder Chawla)

- Basis for Contention: Ravinder Chawla maintains that the proposed amendment to this count fails to state a claim under RICO against him and is, therefore, futile.

- Holding: Plaintiffs' request for leave to amend Count I will be denied as to Ravinder Chawla.

> Count II - Conspiracy to Violate RICO (Plaintiffs against All Defendants)

- Basis for Contention: The Chawla Defendants argue that the Complaint fails to allege the requisite injury element and is, therefore, futile.

- Holding: The request for leave to amend will be granted as the count sufficiently states a conspiracy to violate RICO as to both Ravinder Chawla and Hardeep Chawla.

> Count IV - Fraud and Conspiracy to Commit Fraud (Plaintiffs against Pratpal
> Bagga and Ravinder Chawla)

---

[1]The standard acronym for the Racketeer Influenced and Corrupt Organizations Act of 1984, 18 U.S.C. § 1961 et seq.

- Basis for Contention: Ravinder Chawla argues that the Plaintiffs lack standing thereby rendering the proposed amendment futile.

- Holding: The request for leave to amend will be denied and Count IV will be dismissed as to Ravinder Chawla.

Count VIII - Aiding and Abetting A Breach of Fiduciary Duty (Plaintiffs vs. All Defendants)

- Basis for Contention: Chawla Defendants maintain that this proposed amendment fails to state a claim for two reasons: first, the operative allegations predate insolvency; and, second, the count fails to explain how either of the Chawla Defendants aided or abetted fiduciary breaches. It is, therefore futile.

- Holding: The request for leave to amend will be granted as this amendment alleges a claim for aiding/abetting a fiduciary breach against both Ravinder Chawla and Hardeep Chawla.

Count IX - Fraudulent Transfer (Plaintiffs against Pratpal and Khushvinder Bagga, World Apparel, Ravinder Chawla and Sant Properties)

- Basis for Contention: the Chawla Defendants argue that in seeking leave to amend when they did, the Plaintiffs are guilty of undue delay and are otherwise barred by the applicable statute of repose.

- Holding: The request for leave will be denied for the reasons stated herein.

*Summary of Holding as to
to Request Under Rule 54(b)*

With regard to the Plaintiffs' alternative request for entry of any adverse ruling as a final judgment, the Court rules as follows: given that the Court's ruling denies them leave as to only some, and not all, of the claims against Messrs Chawla, entry of a final judgment for purposes of immediate appeal is not warranted.

*Background*

This is the Plaintiffs' second request for leave to amend its complaint. This

Court's Opinion of July 22, 2008 granted the Plaintiffs' first such request. After Plaintiffs

filed an amended complaint (the First Amended Complaint or FAC), the Chawla

Defendants moved to dismiss for failure to state a claim. This Court's opinion of March

5, 2009, granted that motion. The purpose of this motion is to correct the defects

which the Court found in that pleading or to have that ruling certified as ripe for

appeal.[2]

*Applicable Legal Standard*

Rule 15[3] of the Federal Rules of Civil Procedure provides, in pertinent part:

> (a) ***Amendments Before Trial***.
> (1) ***Amending as a Matter of Course***. A party may
> amend its pleading once as a matter of course:
> (A) before being served with a responsive pleading; or
> (B) within 20 days after serving the pleading if a responsive
> pleading is not allowed and the action is not yet on the trial
> calendar.
> (2) ***Other Amendments***. In all other cases, a party may
> amend its pleading only with the opposing party's written
> consent *or the court's leave*. The court *should freely give
> leave when justice so requires.*

Fed.R.Civ.P. 15(a)(1),(2) (2007) (emphasis added). The Supreme Court has made it

clear that the application of this presumption is "a mandate to be heeded." *Foman v.*

*Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). It furthers the

---

[2]Because this is the seventh Opinion issued in this proceeding, the Court will not recite
the exhaustive factual background and case history. That is available, *inter alia*, at 365 B.R.
540 (Bankr.E.D.Pa.2007) (ruling on Defendant's Motion to Dismiss the original complaint); 382
B.R. 263 (Bankr.E.D.Pa.2008) (granting Chawla Defendants' Motion for Partial Summary
Judgment on RICO claims); 385 B.R. 127 (Bankr.E.D.Pa.2008) (denying Chawla Defendants'
Motion for Summary Judgment as to remaining claims); and 392 B.R. 149 (Bankr.E.D.Pa.2008)
(denying Plaintiff's motion for reconsideration of summary judgment as to RICO claims and
granting limited leave to amend complaint)

[3]Made applicable by B.R. 7015.

policy of trying cases on their merits. *Id.* It also avoids that possibility of the opposing

party suffering prejudice or surprise. Wright Miller & Kane, *Federal Practice and

Procedure*, Civil 2d § 1484. The precise delineation of when leave should be granted or

denied is impossible; therefore, the determination is left to the sound discretion of the

trial judge. *NAACP v. Harrison*, 907 F.2d 1408, 1417 (3d Cir.1990). This requires the

Court to consider the positions of *both* parties and the effect that the request will have

on them. Wright Miller*, supra* at § 1487 (emphasis added). For that reason, the Court

may deny a request to amend when the moving party has demonstrated undue delay,

bad faith or dilatory motive, or where the amendment would prejudice the opposing

party. *See Foman, supra, id.*; *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d

Cir.2002) Equally, an amendment will be denied where it is futile. *Id.*

### *The Chawla Defendants'*
### *Arguments in Opposition*

In one way or another, the Chawla Defendants raise all five of the grounds upon

which a Court might refuse leave to amend. They see undue delay or a dilatory motive

in Plaintiffs' raising of what they consider to be seriatim theories of relief. Likewise,

they see bad faith in Plaintiffs' attempt to resurrect dismissed claims. In their charge of

futility and prejudice, their arguments become more specific. For example, they see

the RICO count as failing on a number of fronts. There is as yet no continuity pleaded;

neither does that claim plead causation. Similarly, they say, the RICO conspiracy claim

fails to allege injury. The common law fraud and conspiracy to commit fraud claims,

they argue, are barred under the law of the case doctrine. The aiding and abetting

fiduciary breach claim, they contend, remains based on acts committed before the

5

entities became insolvent. Finally, the Chawla Defendants argue that they would be prejudiced if the fraudulent transfer claim were restated so as to include them, particularly because the limitations period on such a claim has long since passed. *See* Chawla Defendants' Brief, pp. 7-11.

*Count I-RICO*

The Court begins with the RICO claim. Count I alleges that Pratpal Bagga, Khushvinder Bagga and Ravinder Chawla violated § 1962 of RICO. That section provides, in pertinent part, that:

> [i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). In order to plead a violation of RICO, a plaintiff[4] must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Lum v. Bank America*, 361 F.3d 217, 223 (3d Cir.2004); *citing Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).

*Conduct*[5]

Liability under subsection (c) is predicated on a defendant having "conduct[ed] or participate[d], directly or indirectly, in the conduct of [the] affairs of the enterprise."

---

[4]RICO creates a private cause of action for a person injured in business or property under 18 U.S.C. § 1962. 18 U.S.C. § 1964(c) *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

[5] Because there is no doubt of course that Ravinder Chawla is a "person" as defined by the statute (18 U.S.C. § 1961(3)) the Court can proceed directly to the question of alleged "conduct."

18 U.S.C. § 1962(c)(emphasis added).  In *Reves v. Ernst & Young*, the Supreme Court

held that " 'to conduct or participate, directly or indirectly, in the conduct of such

enterprise's affairs,' one must participate in the operation or management of the

enterprise itself." 507 U.S. 170, 185, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993) (citation

omitted).[6] The High Court understood the word "conduct" to indicate some degree of

direction over the affairs of the enterprise.  *Id.* at 178, 113 S.Ct. at 1169.  The Court

concluded also that the term "participate" meant "to take part in ." *Id.* at 179, 113 S.Ct.

at 1170; *see also University of Maryland v. Peat, Marwick, Main & Co.*, 996 F.2d 1534,

1538 (3d Cir .1993) (adopting "operation or management" test enunciated in *Reves*);

*see also United Nat. Ins. Co. v. Equipment Ins. Managers*, 1995 WL 631709 *4

(E.D.Pa.).  The Court thus considers the conduct or participation on the part of

Ravinder Chawla[7] alleged in the proposed amendment.

The Second Amended Complaint (SAC) includes Ravinder Chawla among the

Individual Defendants who conducted the affairs of the RICO enterprise.  *See* SAC ¶ 64

As a general matter, the Individual Defendants are alleged to have directly or indirectly

conducted or participated in conducting the affairs of the enterprise.  *Id.* ¶ 69.  As to

Ravinder Chawla specifically, he is alleged to have engaged in mail or wire fraud when

he had his company send phony invoices to Mr. Bagga's company.  Those invoices were

sent along to the lender to induce it to make certain loans.  *Id.* ¶ 71(b).  He is also

---

[6]Although *Reves* involved a motion for summary judgment, the Third Circuit has held
that its holding is applicable to a motion to dismiss.  *See University of Maryland v. Peat,
Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir.1993) (rejecting argument that *Reves* test
applies only in a summary judgment context)

[7]As before, this count is *not* directed at Hardeep Chawla.

alleged, along with Mr. Bagga, to have made various payments to themselves from the

proceeds of the Captec loans. *Id.* ¶ 72(b). They are alleged to have continued doing

this as late as 2005/2006. *Id.* ¶ 73. In addition to what he is alleged to have done *vis-a-vis* Captec, Mr. Chawla is charged with transmitting false documentation to other

lenders. *Id.* ¶ 74(b)(i). Specifically, he is alleged to have submitted false information

via mail or wire to Hudson United Bank to induce that entity to restructure its loans to

his businesses at a discount. The last example of alleged mail/wire fraud involves the

selling of the sham judgment which Mr. Bagga's company had against Mr. Chawla's

company. *Id.* ¶ 74(b)(iii) From mail and wire fraud the SAC moves on to allege

trafficking in counterfeit goods, specifically clothing. *Id.* ¶¶ 78, 79. The last example of

conduct is money laundering. *Id.* ¶¶ 80, 81(c). All of this indicates to the Court that

the SAC sufficiently alleges conduct on Ravinder Chawla's part as well as on the part of

his companies.

*Enterprise*

The "conduct" or "participation" alleged must have been part of the affairs of an

"enterprise." The statute specifically defines an enterprise as "any individual,

partnership, corporation, association, or other legal entity, and any union or group of

individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). As to

exactly what must be pleaded to state the existence of an enterprise, this Court's March

2009 Opinion discussed the effect the Supreme Court's decision in *Bell Atlantic Co., Inc.

v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007) has on the required standard. This

Court concluded that the High Court would require that the plaintiff must plead more

8

than the existence of an enterprise, but less than the proofs which establish that enterprise. *See* 416 B.R. 412, 417 (Bankr.E.D.Pa. 2009). The Court accordingly turns now to the allegations in the SAC to determine if they adequately inform the Defendants of the alleged enterprise.

The parties will recall that as to the First Amended Complaint, the Court has found than an enterprise had been sufficiently pleaded. *Id.* So it should come as no surprise that the SAC pleads the existence of an enterprise similarly. The SAC defines the Bagga/Chawla enterprise as an association in fact of persons engaged in clothing, real estate and restaurant ventures under the joint direction, control and leadership of Individual Defendants Pratpal and Khushvinder Bagga and Ravinder and Hardeep Chawla. SAC, ¶ 61. This enterprise is further alleged to have engaged in or affected interstate commerce within the meaning of RICO. *Id.* ¶ 62.

The modus operandi of the enterprise is the same. It is alleged to have fraudulently obtained loans, converted the loans to the personal use of the individuals, intentionally defaulted on the loans, and then either offered to settle the loans at a discount or simply put the obligated entities out of business or placed their assets beyond recovery. The end result of all this is to enrich the individual members of the enterprise at the expense of lenders and other legitimate creditors. *See generally Id.* ¶ 63. In terms of pleading, the SAC sufficiently sets forth the existence of a RICO enterprise.

*Pattern and Racketeering*

The conduct of a RICO enterprise defendant must involve a "pattern of

9

racketeering activity." In its April 2007 and March 2009 Opinions, this Court observed

that it made sense to determine first if *acts of racketeering* were alleged before

determining if those acts were part of a *pattern*. *See, e.g., H.J., Inc., v. Northwestern

Bell Tel. Co.*, 492 U.S. 229, 250, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989) (finding

first that petitioner alleged multiple predicate acts of bribery before analyzing whether

such acts related to a common purpose); *see also Kehr Packages, Inc. v. Fidelcor, Inc.*,

926 F.2d 1406, 1411-12 (3d Cir.1991) (finding that complaint alleged predicate act of

mail fraud before determining if pattern pleaded).  As before, the Plaintiffs' substantive

RICO claims, however, are not directed at both of the Chawlas.  The question thus

becomes: Whether the proposed amendment pleads the requisite "racketeering

activity" as to Ravinder Chawla.

        As before, the Court begins with the definition found in the statute. It defines, in

pertinent part, a "racketeering activity" as

> (B) any act which is indictable under any of the following
> provisions of title 18 United States Code: ... section 1341
> (relating to mail fraud), section 1343 (relating to wire fraud)
> ... section 1956 (relating to the laundering of monetary
> instruments) ...(D) any offense involving fraud connected
> with a case under title 11 [bankruptcy fraud]...

18 U.S.C. § 1961(1). The SAC alleges two or more related instances of mail fraud, wire

fraud, money laundering, and bankruptcy fraud.  ¶¶ 71-85.  Before determining if the

allegations implicate Ravinder Chawla, the Court will first review the pleading standard

applicable to each predicate act.

*Different Pleading Standards
for Different Predicate Acts*

Where, as here, Plaintiffs rely, *inter alia*, on a series of fraud-based predicate

acts (mail, wire, and bankruptcy fraud), those allegations must meet a heightened

standard.  But also as before, the SAC pleads predicate acts that are not fraud-based.

Our previous Opinions explained that the non-fraud predicates must be plead in

accordance with a general notice standard.  As the law has not changed on that

subject, the same standards apply.

*Mail/Wire Fraud*

In their Motion, the Plaintiffs point out that where the First Amended Complaint

identified but one instance of mail fraud on Mr. Chawla's part, the SAC lists 25 separate

instances of mail or wire fraud perpetrated by him.  What is not mentioned, however, is

the timing of those alleged violations.  The Court is referring here to a recurring (and

unfortunate) issue in this proceeding: the February 2008 summary judgment ruling

which limited the Plaintiffs' standing to only those claims which arose *after* September

2002.  *See* 382 B.R. 263 (Bankr.E.D.Pa. 2008)  The significance of that date is well

known to the parties as being the date from which the Plaintiff FL Receivables Trust (FL

Trust) was assigned the loan which Captec made to Mr. Bagga and his companies and

from which all of the alleged racketeering emanated.  That assignment, it will be

further recalled, failed to include among the assigned assets any legal claims.  Thus,

the Court ruled, FL Trust would have standing to sue these defendants only for harms

incurred after the assignment and independently suffered by it.  What remains to be

seen is how many of the alleged predicates acts are excluded from this Plaintiffs'

11

standing because they occurred *before* the loans were assigned to it.

A review of Count I reveals that the majority of the alleged acts of mail and wire

fraud predated the assignment. The seven examples cited in ¶ 72(b) all occurred

before September 2002. They therefore cannot make up a mail or wire fraud RICO

predicate for which this Plaintiff has standing.

*Post-Assignment Allegations
of Mail/Wire Fraud*

Paragraph 73 alleges that Mr. Chawla's mail and wire fraud continued on into

2005 and 2006. It is alleged there that both Messrs. Bagga and Chawla made a wire

transfer of $175,000 to one Ehud Gratch and three transfers of $25,000 each to

Marigold Corp. Exactly who these two recipients are is never explained. More

importantly, the SAC never explains the precise source of the funds that were

transmitted. Moreover, it is unclear whether it was Mr. Bagga or Mr. Chawla who

transmitted the funds. This is simply too vague for fraud pleading.

The next paragraph, however, alleges more of such conduct in 2005 and 2006.

As to Ravinder Chawla, he is alleged to have used the mails and wires during this time

period to have committed three additional frauds. The first two involve lenders not a

party to this suit. It is there alleged that he misrepresented the true condition of his

company World Apparel to the Export-Import Bank and Hudson United Bank. ¶

74(b)(i), (ii). This was done, the SAC explains, to restructure the obligations to these

lenders at less than true value. *Id.*

The third instance is a different matter. Clause (iii) of subparagraph 74(b) of the

SAC alleges that

12

> [i]n 2006, [Mr. Chawla] used the mails and wires to
> *complete* the sale of the AMCI judgment.  Mr Chawla and
> Mr. Bagga structured this transaction in such a way so as to
> maintain the Individual Defendants' control over the Loan
> proceeds (and the proceeds generated from them) that had
> previously been deposited with World Apparel, to defeat FL
> Trust's claim to the Borrowers' and Guarantors' assets, and
> to defeat the Trustees' ability to recover assets of the
> Debtors' Estate.  The documents executed by Mr. Chawla in
> connection with this transaction were sent by mail, fax or
> email between the defendants' offices in Pennsylvania to the
> Virginia office fo the Global Recovery Group.

¶ 74(b)(iii) (emphasis added).  What this refers to is the events which transpired in

April 2001 after the Captec loan went into default.  Mr. Bagga would explain to the

lender that he could not pay them because the loan proceeds were invested and lost in

Mr. Chawla's company World Apparel.  In lieu of payment, Mr. Chawla had thus given

Mr. Bagga a "judgment note" in the amount of $6 million. That judgment was a sham,

the theory goes, and would never be enforced by Mr. Bagga.  Its sole purpose was to

frustrate the lender's effort to recover its loss from Mr. Chawla's company. *See*

*generally*, SAC ¶ 40.

Even so, the Plaintiff cannot bring it within the realm of standing by somehow

characterizing the judgment as being "incomplete" as of September 2002.  As the

pleading states, the judgment was given in April 2002 yet what was needed "to

complete the sale of the AMCI judgment" by 2006 is never explained.  This is simply

too vague to meet the heightened pleading requirements for a mail/wire fraud RICO

predicate.

The final allegations of mail/wire fraud come under the subheading "B. Other

Instances of Mail and Wire Fraud." *See* SAC ¶¶ 78-79.  They allegedly involve

13

trafficking in counterfeit goods and laundering the resulting proceeds. Like so much else in the count, they are predicated on conduct which preceded the assignment of claims from Captec to Plaintiff. Therefore, Plaintiff has no standing to allege a RICO claim against Ravinder Chawla based on that conduct.

*Bankruptcy Fraud*

The other fraud-based predicate act is related to the Debtors' bankruptcy cases. As to Ravinder Chawla, however, the predicate act is silent. The primary actor in this regard is Pratpal Bagga. See SAC ¶¶ 82-85 It will not do, as the Plaintiffs would have the Court accept, to merely lump both Mr. Chawla together with Mr. Bagga so as to plead a bankruptcy fraud predicate against the former. Given the higher pleading standard applicable to fraud-based claims, this is simply insufficient to allege bankruptcy fraud.

*Money Laundering*

The SAC also alleges the predicate act of money laundering. One is guilty of that offense if one:

> [ ] knowing that the property involved in a financial
> transaction represents the proceeds of some form of
> unlawful activity, conducts or attempts to conduct such a
> financial transaction which in fact involves the proceeds of
> specified unlawful activity-
> ...
> (B) knowing that the transaction is designed in whole or in
> part
>
> (i) to conceal or disguise the nature, the location, the
> source, the ownership or the control of proceeds of specified
> unlawful activity ...

18 U.S.C. § 1956(a)(1)(B)(i). As noted, the pleading of this predicate act is not judged

14

by the heightened standard applicable to fraud-based wrongs.  This predicate begins

with the general allegation that all of the individual defendants concealed—in one way

or another— some of the funds which were fraudulently obtained from the lender.

With regard to Ravinder Chawla in particular, five instances of money laundering are

set forth.  *See* SAC ¶ 81(c)(i)-(v)  The first three of the five involve conduct which

predated FL Trust's assumption of the loans so they cannot support standing to assert

money laundering as a predicate.  The remaining two, however, are a different matter.

These additional instances of money laundering on his part involve

> (iv) the 13 separate 2004-2006 transactions described in
> paragraph 55 above by which Ravinder Chawla transferred a
> portion of those funds to the Baggas individually and/or to
> third parties on their behalf.  Each transaction is an
> additional individual act of money laundering; and
>
> (v) the 12 transactions described in paragraph 58 by which
> the Chawlas repaid additional sums to the Baggas by
> granting them interests in real estate entities managed by
> Hardeep Chawla without true consideration.  Each
> transaction is an additional individual act of money
> laundering.

SAC, ¶ 81(c)(iv), (v).

Both examples incorporate allegations from elsewhere in the SAC yet only the

first implicates Ravinder Chawla.  It alleges transfers by Mr. Chawla of a total of $1.8

million to various entities and individuals.  Where Mr. Chawla is alleged to have gotten

this money in the first place is from United Management, a Bagga-controlled company.

In 2000/2001 United Management transferred this money to World Apparel, a Chawla-

controlled business, in exchange for which Mr. Chawla gave to AMCI, another Bagga

entity, a judgment.  SAC, ¶ 54.  World Apparel's own books and records credit a similar

total amount ($1.78 million) against an entry "Loan Payable—AMI" account.  Add to this

the allegation that the Baggas have admitted that no real debt underlay the AMCI

judgment, Plaintiffs go on, and it must be concluded that what occurred here was

simply a gratuitous transfer of money from United Management (the Debtor's "bank")

to World Apparel.  From there, the next paragraph alleges, Mr. Chawla sent that money

to the Baggas individually or to the various third parties listed in ¶ 55. The Court finds

from this and the previous paragraph sufficient allegations of money laundering on the

part of Ravinder Chawla.  Having found that the Amended Complaint pleads at least

two racketeering activities, the Court turns to the question of whether it was part of a

pattern.[8]

*What Constitutes a Pattern for Purposes of RICO?*

Our previous Opinions noted that there is no specific definition of the term

"pattern" in the statute, but that RICO defines the broader term "pattern of

racketeering activity" as:

> at least two acts of racketeering activity, one of which
> occurred after the effective date of this chapter and the last
> of which occurred within ten years (excluding any period of
> imprisonment) after the commission of a prior act of
> racketeering activity;

18 U.S.C. § 1961(5).  This definition has been held to "state a minimum necessary

---

[8]Paragraph 58 lists 12 instances where the converted money was exchanged for
interests in property owned by *Hardeep* Chawla.  From 2004-2006, it is alleged, Hardeep
Chawla granted the Baggas interests in over a dozen of his real estate projects and for no
consideration.  Hardeep Chawla, however, is not a Defendant against whom this count is
directed.

condition for the existence" of a "pattern." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492

U.S. 229, 237, 109 S.Ct. 2893, 2899, 106 L.Ed.2d 195 (1989)  The Supreme Court has

emphasized that allegations cannot constitute a RICO "pattern" unless they show that

the racketeering predicates are related, and that they amount to or pose a "threat of

continued criminal activity." *H.J. Inc.*, 492 U.S. at 239; *see also Kehr Packages, Inc. v.

Fidelcor, Inc.*, 926 F.2d 1406, 1417 (3d Cir.1991) (emphasis added) (citing *H.J., Inc.*,

*supra* to require RICO plaintiff to plead that predicate acts were related and that they

amount to or pose the threat of continuing criminal activity to sufficiently allege pattern

requirement); *see also Tabas v. Tabas*, 47 F.3d 1280, 1292 (3d Cir.1995) ("Thus, a

plaintiff seeking to bring a RICO claim must allege, among other things, relatedness

and continuity")

*Relatedness*

The Supreme Court has adopted a broad multi-factor test for relatedness.  It

focuses on whether the alleged predicate acts "have the same or similar purposes,

results, participants, victims, or methods of commission, or are interrelated by

distinguishing characteristics and are not isolated events." *H.J., Inc.* at 240, 109 S.Ct. at

2901 (quoting Dangerous Special Offender Sentencing Act, 18 U.S.C. § 3575(e) (1982),

repealed by Sentencing Reform Act of 1984, Pub.L. No. 98-473, tit. II, § 212(a)(2), 98

Stat.1987).  Does the Second Amended Complaint allege a nexus among Ravinder

Chawla's predicate acts?

The Court sees that the 13 transfers of money alleged to have been made by Mr.

Chawla in ¶ 55 are related both at their source and in their intention.  Each is alleged to

derive from the loan proceeds which the Bagga Defendants obtained from Captec,

diverted to World Apparel and which Mr. Chawla (and others) laundered via transfers to

third parties.  That this was purposeful is allegedly demonstrated by the judgment

artifice which was devised for no other reason than to thwart the lender's recovery

attempts.  This was all part of the alleged fraud to not only obtain the loan proceeds,

but to convert them as well.

*Continuity*

But relatedness of the predicates is only half of what is required. It must also be

shown that the predicates themselves amount to, or that they otherwise constitute a

threat of, *continuing* racketeering activity.  *See H.J. Inc., supra,* 492 U.S. at 240, 109

S.Ct. at 2901.  In its previous Opinions, this Court discussed the Third Circuit's

interpretation of the RICO continuity requirement.  The Third Circuit explained that the

continuous nature of the pattern could be either open or closed-ended.  *See Kehr*

*Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1412 (3d Cir.1991).  In the March 2009

Opinion the Court found that the First Amended Complaint plead neither type of

continuity as to Ravinder Chawla.  Does the Second Amended Complaint do any better?

It is now alleged that the pattern of racketeering activity has continued from at

least 1999 through the present (¶ 70); that these predicate acts extend over more than

a three-year period and are part of the way the enterprise regularly does business (¶

87); that there is a threat of future racketeering activity because the enterprise

continues to engage in transactions with the fraudulently obtained loan proceeds,

proceeds from other illegal ventures as well as other converted assets (¶ 88); and that

18

its members have continued to engage in transactions with the remainder of the
proceeds transferred from United Management to World Apparel and Ravinder Chawla
as recently as 2006 (¶ 88).

*Open-Ended Continuity*

With regard to Ravinder Chawla it would be hard to argue that the SAC pleads
open-ended continuity considering that his predicate acts are limited to the instances of
money laundering.  While they are many in number, the last alleged act of money
laundering is supposed to have occurred in 2006.  If there is continuity to his predicate
acts, then it must closed-ended.

*Closed-End Continuity*

Our March 2009 Opinion discussed what might constitute continuity in the
absence of ongoing fraud.  We observed how the Supreme Court explained that while
the notion is a fundamentally temporal one, duration—and not perpetuity—was the
essential element.  Indeed, in this case there is no allegation that Ravinder Chawla
engaged in racketeering after 2006.  However, the SAC does allege a rather large
number of instances of money laundering committed by him.  He is charged with 13
acts of money laundering from July 2005 through May 2006.[9]  In other words, he is
alleged to have committed the same offense several times but within a time frame
which is less than one year.  Is that sufficiently continuous?

The High Court in *H.J., Inc.* explained in this regard:

> A party alleging a RICO violation may demonstrate
> continuity over a closed period by proving a series of related

---

[9]The transfers as alleged do not, as ¶ 81(c)(iv) alleges, span 2004 through 2005.

> predicates extending over a *substantial period of time*.
> Predicate acts extending over a few weeks or months and
> threatening no future criminal conduct do not satisfy this
> requirement: Congress was concerned in RICO with long-
> term criminal conduct.

*H.J., Inc.*, 492 U.S. at 242 (emphasis added). The general rule is that predicate acts

which do not extend beyond one year are simply insufficient to establish a pattern

under RICO. The Third Circuit has consistently held that various spans of time longer

than six months *do not* constitute a substantial period of time. *See Hughes v. Consol-*

*Pennsylvania Coal Co.,* 945 F.2d 594, 611 (3d Cir. 1991) (holding that twelve months is

not a substantial period of time); *Kehr Packages, Inc. v. Fidelcor,* 926 F.2d 1406, 1418

(3d Cir.1991) (holding that eight months was not a substantial period of time); *Hindes*

*v. Castle,* 937 F.2d 868, 875 (3d Cir.1991) (eight month period not substantial); *see*

*also Binary Semantics, Ltd v. Minitab, Inc.,* 2008 WL 763575 at *3 (E.D.Pa.) Under this

guideline, the ten-month period over which Mr. Chawla is alleged to have laundered

proceeds from the Captec loans and other sources is simply not enough to demonstrate

a racketeering pattern. For that reason, the RICO count fails as to Ravinder Chawla.[10]

*RICO Conspiracy*

Although the SAC fails to state a substantive RICO violation as to Ravinder

Chawla, it is not the only RICO claim which the Plaintiffs level against him. As before,

Count II charges *all* of the Defendants with having conspired to violate RICO. *See* 18

U.S.C. § 1962(d) ("[i]It shall be unlawful for any person to conspire to violate any of

the provisions of subsection (a), (b), or (c) of this section.") The preceding finding that

---

[10]This finding obviates the need to analyze whether the SAC sufficiently pleads
causation under RICO.

the SAC does not state a substantive RICO claim as to Ravinder Chawla does not

preclude bringing of a RICO *conspiracy* claim against him.  So long as a complaint

alleges that at least one of the other defendants committed a substantive RICO

violation, another defendant may be guilty of conspiring with that defendant without

himself having committed a substantive predicate act.  *See Smith v. Berg,* 247 F.3d

532, 537-38 (3d Cir.2001) (citing *Beck v. Prupis,* 529 U.S. 494, 506-07, 120 S.Ct. 1608,

146 L.Ed.2d 561 (2000) ("[A] plaintiff could, through a § 1964(c) suit for violation of

1962(d), sue co-conspirators who might not themselves have violated one of the

substantive provisions of § 1962.")).  *See Lum v. Bank of America,* 361 F.3d 217, 227

n. 5 (3d Cir.2004) (upholding dismissal of § 1962(d) claim because plaintiff failed to

adequately plead any substantive RICO violation) (citing *Lightning Lube, Inc. v. Witco

Corp.,* 4 F.3d 1153, 1191 (3d Cir.1993)); *see also Pappa v. Unum Life Ins. Co. of Am.,*

2008 WL 744820, at *17 (M.D.Pa.) (dismissing claim of conspiracy under § 1962(d)

because complaint failed to allege violation of § 1962(c)).

As to what is required to be liable for RICO conspiracy, a defendant must

"knowingly agree[] to facilitate a scheme which includes the operation or management

of a RICO enterprise." *Smith, supra,* 247 F.3d at 538.  This is not to say that those who

innocently "merely provide services" are liable for conspiracy under § 1962(d); rather,

as the Third Circuit Court of Appeals explained, "liability will arise only from services

which were purposefully and knowingly directed at facilitating a criminal pattern of

racketeering activity." *Id.* at 537 n.11.  This means that the Court must determine first

if the SAC states a substantive RICO violation as to a Defendant other than Ravinder or

Hardeep Chawla.  If it does, then the Court may proceed to the question of whether

the SAC sufficiently pleads that the Messrs. Chawla conspired with that person.

*RICO and the*
*Other Defendants*

An analysis of whether any of the other Defendants violated RICO is streamlined

by a number of factors.  Our previous discussion set forth the framework for judging

the legal sufficiency of a substantive RICO claim.  It also recognized the Plaintiffs'

limited standing to raise claims limited to harm incurred only after FL Trust was

assigned the loan.  And lastly, Mr. and Mrs. Bagga, the other individual defendants, are

alleged to have committed several of the same predicate acts attributed to Ravinder

Chawla.  So for purposes of determining if the SAC sets forth a substantive RICO claims

against a defendant with whom the Chawlas conspired, a truncated analysis will suffice.

In determining if the SAC pleads substantive RICO as to a different defendant, it

is logical to look first to Pratpal Bagga.  He is the central figure in the SAC's narrative,

*even after September 2002*, the date when FL Trust purchased the defaulted loans

from Captec.  It is alleged to begin with mail/wire fraud.  In early 2003, Pratpal Bagga

telephoned FL Trust to discuss the loans never explaining that the underlying

documentation to the loans was falsified or that the loan proceeds had been diverted.

*See* SAC ¶¶ 74(a)(iv).  Similarly, he is alleged to have lied to FL Trust at about that

same time period as to where their collateral was.  *See* SAC ¶¶ 74(a)(v).  Also, in 2003

and 2004 Mr. Bagga would place the Debtors in bankruptcy.  *See* SAC ¶ 82.  These

entities, it is alleged, were profitable and were placed in Chapter 11 to hide payments

to the Baggas which were characterized as management fees.  *See* SAC ¶ 83.  From

22

there, the SAC moves on to money laundering where it is alleged that in 2005 and 2006 Mr. Bagga received back from Ravinder Chawla transfers of money. *See* SAC ¶ 55. This is alleged to be the money which originated from the Captec loans, which wended its way through United Management, from which it was sent to World Apparel before ending up back with Mr. Bagga. *See* SAC ¶¶ 81(a)(v), (vi) and 55. As to whether these acts are related, the SAC shows this to be part of the over-arching scheme to get the loans, convert their proceeds and forever keep them beyond FL Trust's reach. Although this is alleged to have occurred over a limited period of time and after the loans were assigned to FL Trust, the Court finds the SAC to allege those acts over a three to 3½ year period. That is sufficient, at least, for "closed-end" continuity. And finally, as to injury, FL Trust has purchased a loan for which it has not received any repayment or other recovery. The SAC thus alleges a *prima facie* RICO violation as to Pratpal Bagga. Having found the SAC to set forth an underlying substantive RICO violation as to one of the Defendants, the Court turns to the question of whether it is alleged that either of the Chawlas conspired with Mr. Bagga as to those violations.

*Standard for Pleading*
*RICO Conspiracy*

The standard for *pleading* a RICO conspiracy remains unchanged since our March 2009 Opinion. It is: (1) an agreement to commit the predicate acts of fraud, and (2) knowledge that those acts were part of a pattern of racketeering activity conducted in such a way as to violate § 1962(a), (b), or (c). *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir.1989) *citing Odesser v. Continental Bank,* 676 F.Supp. 1305, 1312 (E.D.Pa.1987). "[A]llegations of conspiracy are not measured under the ...

[Fed.R.Civ.P.] 9(b) standard, which requires greater particularity of allegation of fraud, but are measured under the more liberal ... Fed.R.Civ.P. 8(a) ] pleading standard." *Odesser*, 676 F.Supp. at 1313.  A conspiracy claim must also contain supportive factual allegations. *See Black & Yates, Inc. v. Mahogany Ass'n, Inc.,* 129 F.2d 227, 231-32 (3d Cir.), *cert. denied,* 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539 (1942). The allegations must be sufficient to "describe the general composition of the conspiracy, some or all of its broad objectives, and the defendant's general role in that conspiracy." *Alfaro v. E.F. Hutton & Co., Inc.,* 606 F.Supp. 1100, 1117-18.  A conspiracy complaint "must contain sufficient information for the court to determine whether or not a valid claim for relief has been stated and to enable the opposing side to prepare an adequate responsive pleading." Wright & Miller, *Federal Practice & Procedure, Civil 3d* § 1233.  "'Although mere inferences from the complaint are inadequate to establish the necessary factual basis', a court may look to any 'factual allegations of particular acts' within the complaint as a whole incorporated by the conspiracy claim to provide this basis." *Rose, supra,* 817 F.2d at 366 (citations omitted); *see also Swiggett v. Upper Merion Twp.,* 2008 WL 4916039 *3 (E.D.Pa.) *quoting Rose, supra,* ("Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient.")

*Agreement on the Part*
*of the Chawla Defendants*

Count II divides the alleged conspirators into two subgroups.  First, Pratpal Bagga, Khushvinder Bagga and Ravinder Chawla are alleged to have "agreed to

24

conduct the affairs of the Enterprise through a pattern of racketeering activity, in violation of section 1962(c)." ¶ 91.  The other subgroup is expanded to included Hardeep Chawla and each of the other Defendants who, it is alleged, agreed with one or more of the Individual Defendants to similarly violate RICO.  ¶ 92  The discrete points of agreement coincide with the inception of the enterprise and run through the Debtors' bankruptcy cases.  ¶ 93.  The universe of conspirators here is alleged to consist of Ravinder Chawla's company World Apparel, Hardeep Chawla's company Sant Properties, Messrs Chawla themselves, Pratpal and Khushvinder Bagga.  ¶ 94.  All acts taken by these Defendants were allegedly done knowing that such acts would further the conspiracy.  ¶ 95.

As to what these Defendants are alleged to have specifically done, it is explained that Ravinder Chawla and his companies "participated" in the conversion of the Debtors' assets in order to avoid the claims of their creditors.  ¶ 96(a)(i)  Similarly, Hardeep Chawla is charged with participating in this conduct by granting the Baggas gratuitous interests in his real estate projects.  ¶ 96(b)(i)  Where Hardeep Chawla is accused of something else is with regard to the allegation that he directed his company, Sant Properties, to file a fraudulent bankruptcy claim.  ¶ 96(b)(ii)  And as to that, the Court makes the same inference as to whether it was done by agreement: such actions are not done without purpose.  In other words, it is reasonable to infer that both Messrs. Chawla and their companies were in agreement with other Defendants when they engaged in what is alleged here.

*The Required Mental State*

While a RICO violator must have agreed with his co-conspirator, he must also

have known at the time of the conspiracy that he would be engaging in racketeering.

*See Rose, supra,* 871 F.2d at 367 (noting that conspirator must have knowingly

furthered the enterprise's affairs).  This second element— *mens rea* —is what the

amendment must establish as to the individual Chawla Defendants.  As before, it is

alleged within this count that "Defendants knowingly undertook the commission of acts

that did, or would, if successful constitute a pattern of racketeering activity in violation

of § 1962(c)."  Unlike the First Amended Complaint, however, the specific instances

from which an intent to conspire may be inferred are not found in allegations preceding

the RICO count, but appear expressly within it.  It is these allegations — ¶ 96, its

subparagraphs and clauses — which provide a basis from which to draw that

conclusion.  As with the First Amended Complaint, what is alleged this time assumes a

threshold level of deliberation and design.  The allegation of conversion on Ravinder

Chawla's part suggests that he knew that such actions would further the aims of the

enterprise.  Likewise, Hardeep Chawla's alleged filing of a fraudulent proof of claim

leads to the same conclusion: i.e., one would not go to the trouble of filing a false claim

without intending it to adversely affect any chance of distribution to legitimate

creditors.  Like its predecessor, the Second Amended Complaint alleges the requisite

mental state of the Chawla Defendants.

*Injury and the RICO Conspiracy Claim*

The parties will recall from the March 2009 Opinion that the previous RICO

conspiracy claim failed on the injury element.  There, the Court found no allegation of

injury to these Plaintiffs which could be attributable to Ravinder Chawla.  What harm

was sustained was visited, instead, upon FL Trust's predecessor.  The corollary to that

finding was that the Plaintiffs lacked standing.  Neither was there a sufficient allegation

of injury as a result of Hardeep Chawla's purported bankruptcy fraud.  The Court found

such allegations to be speculative thereby lacking the detail required for fraud-based

pleading.  *See* 416 B.R. at 431.  Do the proposed amendments allege an injury to *these*

Plaintiffs which resulted from the Chawlas conspiring with another defendant?

The claim of harm comes up in ¶ 97: Plaintiffs were allegedly "injured in their

business or property by *overt acts* in furtherance of the conspiracy which constituted

*predicate acts of racketeering* activity described in Count I." (emphasis added).  The

"overt/predicate" acts which Plaintiffs allude to are the allegations of money laundering

discussed in the previous count.  Count I set forth five instances of money laundering

on Ravinder and Hardeep Chawla's parts.  ¶ 81(c).  Of those five instances, the last two

matter for present purposes:

> (iv) the 13 separate 2004-2006 transactions *described in paragraph 55* above by which Ravinder Chawla transferred a portion of those funds individually and/or to third parties on their behalf.  Each transaction is an additional act of money laundering; and

> (v) The 12 transactions *described in paragraph 58* by which the Chawlas repaid additional sums to the Baggas by granting them interest in real estate entities managed by Hardeep Chawla without true consideration.  Each transaction is an additional act of money laundering.

SAC, ¶ 81(c)(iv), (v) (emphasis added).  The conspiracy count thus incorporates–just as

27

the substantive RICO count—the above clauses of ¶ 81(c).  Paragraph 81(c), in turn, incorporates the money laundering allegations of ¶¶ 55 and 58.  Paragraph 55 alleges money laundering committed by Ravinder Chawla while ¶ 58 charges Hardeep Chawla with the same offense.  To determine if both paragraphs allege injury attributable to both of the Messrs. Chawla, the Court must analyze both paragraphs separately.

To reiterate, ¶ 55 sets forth 13 instances of money laundering committed by Ravinder Chawla in 2005/2006.  These are alleged to have involved the transfer of money to the Baggas.  That money was originally received from United Management, another Debtor corporation in the time period 2000/2001.  ¶ 54  Importantly, all 13 transfers were alleged to have been made *after* FL Trust purchased the loan from Captec.  Thus, the transfers occurred when Plaintiff were actively trying to recover on the Captec loans.  As a result, Plaintiffs have standing to allege a conspiracy claim based on such conduct.

Paragraph 58 alleges that Hardeep Chawla employed a different method of money laundering.  Unlike Ravinder Chawla, Hardeep Chawla's alleged laundering did not involve transferring of money but, rather, granting gratuitous interests in real estate to the Baggas.  This is alleged to have been given in exchange for funds deposited with World Apparel (Ravinder Chawla's company) by the Bagga companies.[11]  Moreover, this was alleged to have occurred during the same time period (2004 to 2006).  This, too, would have hindered Plaintiffs' recovery efforts and therefore constitutes sufficient injury for stating a RICO conspiracy claim as to Hardeep Chawla.

_____

[11]Presumably, some of the same money deposited by United Management with World Apparel in 2000 and 2001.

28

*Common Law Fraud*

As before, Count IV[12] charges Ravinder Chawla (along with Pratpal Bagga) with common law fraud and conspiracy to defraud.  The Chawla Defendants raise the same objection to this count as they did previously: what is asserted here is conduct that predates the assignment from Captec to FL Trust.  As a result, FL Trust cannot have been harmed by these acts.  The corollary to that finding is that Plaintiffs lack standing to allege fraud and conspiracy on those facts.  Chawla Brief, 9.

A review of this Count reveals that all of the operative allegations — *to a paragraph* — pertain to conduct that occurred before Captec sold the loans to FL Trust.  Both the allegations of fraud and conspiracy to defraud are limited to the original misrepresentations to Captec.  Paragraph 106 alleges that Mr. Bagga and his companies made representations to Captec which where supported by the false invoices providedby Ravinder Chawla.  Paragraphs 107, 109, and 111 allege the same with regard to Mr. Bagga's submission of false financial statements to Captec.  Paragraph 108 alleges that this was done with intent to mislead the lender.  Paragraphs 112 and 113 explain that both Messrs. Bagga and Chawla knew that the documentation submitted to Captec was false.  Finally, ¶ 114 explains that the fraud was agreed to beforehand by both of them.  None of this pertains to conduct which post-dates the assignment to Captec in September 2002.  As a result, Plaintiffs lack standing to press fraud and conspiracy to defraud claim based on these allegations.  Therefore, leave to amend will be denied as to this count.

---

[12]Count III (Conversion) is not alleged as to either Ravinder or Hardeep Chawla.

*Aiding and Abetting*
*Fiduciary Breach*

Count VIII[13] charges all of the Defendants, save Pratpal Bagga, with having

aided and abetted Mr. Bagga when he breached his fiduciary duties to the creditors of

the Debtor companies.  The Chawla Defendants see two deficiencies in this proposed

count: first, like the fraud and conspiracy to defraud count, it is based on conduct

which predated FL Trust's purchase of the loan; and second, the allegations of aiding

and abetting are so conclusory as to never inform these Defendants of how and what

they did to help Mr. Bagga.  Chawlas' Brief, 9, 10.

To establish the claim in question, a plaintiff must show: (1) a breach of

fiduciary duty owed to another; (2) knowledge of the breach by the aider or abettor;

and (3) substantial assistance or encouragement by the aider or abettor in effecting

that breach.  *Adena, Inc. v. Cohn,* 162 F.Supp.2d 351, 357-358 (E.D.Pa.2001).  As a

breach of fiduciary claim is subject to a notice pleading standard, *see In re Total*

*Containment,* 335 B.R. 589, 611 (Bankr.E.D.Pa.), that standard will similarly govern a

claim that one aided and abetted another breaching such duty.

*Insolvency and*
*Underlying Duty*

Once again, the parties appear to agree that a fiduciary duty arises *as to*

*creditors* once the borrower becomes *insolvent.*  Plaintiffs have plead this condition at

the outset of the count.  *See* ¶ 126  As to the moment in time when the Debtor

corporations became insolvent, the SAC brings that period back in time from what was

---

[13]Counts V through VII are directed at Mr. and Mrs. Bagga and charge them with various
breaches of fiduciary duty.

30

previously alleged. The Court found that the First Amended Complaint alleged

insolvency as of late 2002/early 2003.  In the Second Amended Complaint, how the

Individual Defendants compromised the financial health of the Debtor companies is

alleged to have occurred even earlier.  This is discussed in a section entitled "the

Baggas and Ravinder Chawla Converted the Loan Proceeds and other Assets of the

Borrowers and Guarantors."  *See* SAC, 11.  Paragraph 32 immediately follows that title

and alleges that the loan proceeds were converted by the Individual Defendants for

themselves.  Paragraph 33 alleges that another $1.9 million was transferred to Mr.

Chawla's companies.  Paragraph 34 alleges that from September 2000 through

February 2001 more money from the Debtor corporations was transferred to Mr.

Chawla's company World Apparel.  The end result of all this, ¶ 35 explains, was to

render the Debtor corporations insolvent.  Thus, the Court finds that the SAC alleges

insolvency of the Debtor corporations as of late 2000/early 2001.[14]

---

[14]Although the Chawla Defendants don't specifically argue the point, the law of the case doctrine would not preclude Plaintiffs from alleging insolvency as of a date earlier than that alleged in the First Amended Complaint.  The reason for that is that the earlier ruling on that point was, like here, also made as to a Motion to Dismiss.  In other words, the Court made no factual finding that insolvency existed as of late 2002/early 2003.  The point was inferred from what was pleaded and taken as true for determining whether the count was legally sufficient.  *See In re Integrated Health Services, Inc.*, 358 B.R. 637, 641 (Bankr.D.Del.2007) ("the effect of the decisions on a Motion to Dismiss cannot constitute the law of the case.)  *See, e.g., McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 513 (6th Cir.2000) (concluding that "our holding on a motion to dismiss does not establish the law of the case for purposes of summary judgment"); *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir.1994) (concluding that "[i]nterlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute the law of the case.").  *See also Council of Alternative Political Parties v. Hooks,* 179 F.3d 64, 69-70 (3d Cir.1999) (holding that law of the case doctrine bars does not prohibit courts from revisiting matters that are "avowedly preliminary or tentative").

*Underlying Fiduciary Breaches*

Before determining if the amendment pleads aiding and abetting on the part of

the Chawlas, the Court must first ascertain whether it pleads an underlying breach

which was, in fact, *aided and abetted.* The three counts which precede Count VIII do

just that. They plead examples of fiduciary mis- or malfeasance on the Baggas part:

Self-Dealing (Count V), Failure to Preserve Entity Property (Count VI), and Deepening

of Insolvency (Count VII). No Defendant has challenged the legal sufficiency of those

three counts. The question then becomes: Does the amendment allege that either of

the Chawlas aided or abetted the Baggas as to such conduct?

*Elements of*
*Aiding or Abetting*

The law as to what is required to set forth a claim of aiding and abetting in this

context has not changed since our March 2009 Opinion. What is required is the

pleading of two elements: first, that the Chawlas knew that the Baggas had fiduciary

responsibilities which the Baggas owed; and second, that they substantially assisted or

at least encouraged the Baggas in violating that responsibility. *See* 416 B.R. at 434.

Beginning with the knowledge prong, the SAC alleges that "Hardeep and

Ravinder Chawla knew of the Captec loans; knew that the Borrowers and Guarantors

were in default and allowed default judgments to be taken; knew that the Baggas

transferred assets of the Borrowers and Guarantors to the Chawlas and Chawlas

entities for no consideration; and knew that such transfers rendered the Borrowers and

Guarantors insolvent or deepened existing insolvency." ¶ 127 Here the Court observes,

as it did in the previous opinion, that such a question is straightforward. These

32

allegations involve a group of individuals who are kin[15] and who are principals of their respective businesses. The latter circumstance imputes awareness of their duties as fiduciaries of their own company so it is fair to infer that they are aware of those same duties that Mr. Bagga when he was alleged to have transferred money from his companies to theirs.

In addition to knowing about that duty, the Chawlas must be charged with "substantially assisting or encouraging" the breach of such duty. As we noted in the March 2009 Opinion, no decision has explained what is meant by "substantial assistance and encouragement" of a fiduciary in this particular context. *See* 416 B.R. at 436. There, we borrowed the definition applicable to the tort of "concert of action." *Id.* at 436-437 This has been interpreted to mean that the aid must "proximately cause" the fiduciary breach. *Id.* at 437

Although what is alleged *in* the count is, as the Defendants point out, rather scant, the incorporated allegations sufficiently allege aiding and abetting on the part of both Messrs. Chawla. Again, it bears repeating that such conduct must have occurred after September 2002 for the Plaintiffs to have standing. And as to Ravinder Chawla, the relevant allegations are once again found in ¶¶ 54 and 55. There it is alleged that in 2005/2006 he made 13 transfers of money originally received from the Bagga Companies to the Baggas themselves and various third parties. That supports a claim that Mr. Chawla assisted Mr. Bagga in transferring entity property. *See* Count VI.

Similarly, Hardeep Chawla is alleged to have likewise assisted the Baggas.

---

[15]Pratpal Bagga and the Chawlas are cousins. SAC ¶ 10

Paragraph 58 alleges that

> Moreover, the Baggas and the Chawlas arranged for
> Hardeep Chawla to further repay to the Baggas the funds, or
> the proceeds of those funds, that were deposited into World
> Apparel by the Bagga Companies.  Instead of paying in
> cash, Hardeep Chawla granted the Baggas interests in real
> estate projects he controlled.  In the period from 2004-2006,
> Hardeep Chawla – through his control of the company that
> managed these real estate projects – provided the Baggas
> with interests in real estate projects for no consideration ...

SAC ¶ 58.   According to this allegation, in exchange for leaving their money with World

Apparel—again, Ravinder Chawla's company— the Baggas would receive from Hardeep

Chawla interests in real estate projects owned by him.  That is demonstrated, they

explain, by the lack of any consideration paid by the Baggas to Hardeep Chawla for

those transfers.  This sufficiently alleges aiding or abetting the Baggas' transfer of

entity property as to Hardeep Chawla.

*Count IX - Fraudulent Transfer*

The final count which involves the Chawla Defendants charges Ravinder Chawla,

his company World Apparel, and Sant Properties[16] with having received fraudulent

transfers.  Importantly, the Chawla Defendants do *not* challenge the legal sufficiency of

what is alleged.  In other words, they do not contend that this count fails to state a

claim.  Rather, they contest this amendment on two different grounds: first, they

contend that proposing such an amendment at this late date constitutes undue delay;

and second, they maintain that it is equally time-barred by the applicable statute of

repose.

---

[16]Sant Properties is owned by Hardeep Chawla.  SAC ¶ 25

34

*Delay*

Plaintiffs cannot credibly deny that, as to the new defendants to this count, they are guilty of delay. In the First Amended Complaint, the fraudulent transfer count was limited to the Baggas. Now it includes Ravinder Chawla, his company, and Hardeep Chawla's company. The Court sees no explanation, nor is one offered, as to why they were not included earlier. The operative facts which would implicate Mr. Chawla and those companies were known to the Plaintiffs at least as early as the First Amended Complaint. Ravinder Chawla's alleged general conduct of accepting converted funds from the Baggas has been pleaded before. *See* FAC ¶ 203 The same can be said of the sale of the AMCI judgment to Sant Properties. *Id.* ¶ 99 Their inclusion in the present fraudulent counts is troubling. While this Court has observed in earlier opinions that prejudice is the "touchstone" for undue delay,[17] factors such as dilatory motive and bad faith are also relevant. The decision to bring the fraudulent transfer count against the Mr. Chawla and his companies after all counts against him were dismissed appears to the Court to constitute tactical abuse. This transparent stratagem cannot be countenanced. Indeed, the Court's inherent power to manage the proceedings before mandates such a result. *See Chambers v. NASCO,* 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) The request for leave to amend Count IX as proposed will, therefore, be denied.[18]

---

[17]*See Cureton v. Nat'l Collegiate Athletic Ass'n,* 252 F.3d 267, 273 (3d Cir.2001)

[18]This finding obviates the need to determine whether the proposed amendment pleads a fraudulent transfer claim which is out of time.

35

*Plaintiffs' Request for a*
*Final, Appealable Judgment*

The Plaintiffs make one final request which is framed in the subjunctive: if this

Court refuses leave to amend, then Plaintiffs request certification of that ruling as final

for purposes of immediate appeal.  They explain that they see no just reason for delay.

They consider the issues raised as to the Chawlas as separable from the extant claims

against the Baggas so there is no risk of duplicate trials.  *See* Plaintiffs' Motion for

Leave, pp. 10-11.  For their part, the Chawla Defendants do not expressly oppose this

request.  The Court will undertake its own analysis to determine if partial certification is

appropriate  the circumstances.

Rule 54(b)[19] permits the trial court to separate out final decisions for immediate

appeal in multi-claim or multi-party litigation, as follows:

> When more than one claim for relief is presented in an
> action, ..., or when multiple parties are involved, the court
> may direct the entry of a final judgment as to one or more
> but fewer than all of the claims or parties only upon an
> express determination that there is no just reason for delay
> and upon an express direction for entry of judgment.

Fed. R. Civ. P. 54(b).  A leading commentator recounts the history behind this

provision: "With the formulation of the federal rules, and especially their provisions for

the liberal joinder of parties and claims, it was felt that to deny an immediate appeal

from the disposition of an identifiable and separable portion of a highly complex action

might result in an injustice."  Wright, Miller & Kane, *Federal Practice & Procedure*, Civil

3d. § 2653  Thus, the rule's purpose is to "strike a balance between the undesirability

---

[19]Made applicable in adversary proceedings by B.R. 7054(a).

of more than one appeal in a single action and the need for making review available in

multiple-party or multiple-claim situations at a time that best serves the needs of the

litigants." *Id.* § 2654; *Panichella v. Pa. R.R. Co.,* 252 F.2d 452, 454 (3d Cir.1958)

However, the discretion which Rule 54(b) confers upon a trial judge is not absolute.

*See Sears, Roebuck & Co. v. Mackey,* 1956, 351 U.S. 427, 437, 76 S.Ct. 895, 901, 100

L.Ed. 1297 (explaining that trial court's discretion under Rule 54(b) is judged under an

abuse of discretion standard)  When analyzing whether to certify judgment on fewer

than all claims presented in a multi-claim action, a district court must engage in a two-

party inquiry: (1) whether the judgment is "final" and (2) whether there is any just

reason for delay.  *See Berckeley Inv. Group Ltd. v. Colkitt,* 455 F.3d 195, 202 (3d Cir.

2006) *citing Curtiss-Wright Corp. v. Gen. Elec. Co.,* 446 U.S. 2, 7-8, 100 S.Ct. 1460,

1464-65 (1980).  The burden of proof is on the party seeking the final judgment.

*Murphy v. SIPC,* 2005 WL 2649310 at *4 (E.D.Pa.) *citing Panichella, supra.*

*Could this Ruling*
*Be Considered Final?*

Under the first factor, a "final" judgment is "a decision upon a cognizable claim

for relief," which is "'final' in the sense that it is 'an ultimate disposition of an individual

claim entered in the course of a multiple claims action.'" *Curtiss-Wright,* 446 U.S. at 7,

100 S.Ct. at 1464 (quoting *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427 (1956)).  As

noted above, "[f]inality is defined by the requirements of 28 U.S.C. § 1291, which are

generally described as ending 'the litigation on the merits and leav[ing] nothing for the

court to do but execute the judgment.'" *Sussex Drug Prods. v. Kanasco, Ltd.,* 920 F.2d

1150, 1153-54 (3d Cir.1990) (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.,*

485 U.S. 271, 275 (1988)).  "Rule 54(b) does not alter this definition, but allows a

judgment to be entered if it has the requisite degree of finality as to an individual claim

in a multi claim action.[20] "The partial adjudication of a single claim is not appealable,

despite a rule 54(b) certification." *Sussex Drug,* 920 F.2d at 1154. "The threshold issue,

therefore, is whether the order appealed from finally resolved at least one entire claim,

leaving at least one separate claim unresolved." *Bogosian v. Gulf Oil Corp.,* 561 F.2d

434, 440 (3d Cir.1977).

It would require the narrowest reading of this record to find any finality as to

these rulings.  As discussed, dismissal will be ordered as to the substantive RICO claim

only as to Ravinder Chawla; that count is unaffected as to the Baggas.  The same is

observed as to the common law fraud and fraudulent transfer claims in Counts IV and

IX: they are likewise directed at individual defendants in addition to the Chawlas.

Moreover, the RICO conspiracy claim against Mr. Chawla has been judged legally

sufficient.  Both counts—as well as those which follow them—are built on a common

core of operative facts: the defrauding of Captec which begat subsequent frauds.  It

simply cannot be separated out for a partial adjudication.

*Would Delay of an
Appeal Justified?*

Even aside from concerns of finality, there is no reason why an appeal should

not wait until all of the extant claims are adjudicated.  In considering whether there is

or is no just reason to delay an appeal, the Court must balance considerations of

---

[20]While finality is less of a concern in rulings in main bankruptcy cases per se, the same
consideration is not found in adversary proceedings.  Bankruptcy litigation is treated no
differently from regular civil litigation for purposes of finality. *See SIPC v. Murphy, supra* at *4.

judicial administrative interests as well as the equities involved.  *Waldorf v. Shuta*, 142

F.3d 601, 608 (3d Cir. 1998).  The Third Circuit has identified several non-exclusive

factors for the district court to consider, including: (1) the relationship between the

adjudicated and unadjudicated claims; (2) the possibility that the need for review might

or might not be mooted by future developments in the district court; (3) the possibility

that the reviewing court might be obliged to consider the same issue a second time; (4)

the presence or absence of a claim or counterclaim which could result in set-off against

the judgment sought to be made final; and (5) miscellaneous factors such as delay,

economic and solvency considerations, shortening the time of trial, frivolity of

competing claims, expense, and the like.  *See Allis Chalmers Corp. v. Phila. Elec. Co.*,

521 F.2d 360, 364 (3d Cir.1975) *overrruled in part by Curtiss-Wright*, 446 U.S. at 6-7[21]

Depending on the facts and circumstances of each case, all or some of the above

factors may impact the court's discretion to certify a judgment as final under Rule

54(b).  *See Waldorf, supra*, 142 at 609.

Applying *Allis-Chalmers* to this record augurs against entry of a final judgment.

The relationship between the dismissed RICO claim and the other racketeering claims

reveals a high degree of integration.  Indeed, they are all of a piece: each are driven by

the first fraud perpetrated against Captec in 2000 and the resulting, ensuing alleged

frauds as to FL Trust.  There is also the possibility that an appeal now might be

---

[21]The Supreme Court's ruling was limited to the weight attributable to the existence of a counterclaim in a Rule 54(b) analysis.  The Third Circuit in *Allis-Chalmers* held that in the absence of "unusual or harsh circumstances," the present of a counterclaim would weigh heavily against entry of a Rule 54(b) certification.  The High Court rejected the "unusual or harsh circumstances" requirement.  The five factors in *Allis-Chalmers* are otherwise unaffected.  *See Hess v. A.I. Dupont Hosp. For Children*, 2009 WL 2776606 at *5 n.2 (E.D.Pa.)

mooted.  Should Plaintiff prevail on the RICO conspiracy claim against Ravinder Chawla,

the need for relief on substantive RICO might well be obviated.[22] This is because recovery

against a RICO conspirator is as broad as that against a substantive violator.[23] But

perhaps the factor weighing most heavily against certification is delay.  This implicates

two considerations: first, that such relief must be based on a showing of hardship or

unfairness; and second, that the application of the rule is intended to improve the

administration of justice, and not as a courtesy or accommodation to counsel.  *See*

*Anthuis v. Colt Indus. Operating Corp.,* 971 F.2d 999, 1003-1004 (3d Cir. 1992); *see*

*also* 10 *Moore's Federal Practice,* § 54.23[1][b], [3].  Plaintiffs never explain what harm

is risked in requiring them to wait until all claims are adjudicated before filing an

appeal. And if there is a risk of harm related to any delay, it would appear to be posed

to the Defendants.  This litigation is going on four years and the parties have yet to exit

the pleadings stage.  It would seem then that the Plaintiffs themselves would want to

move this lawsuit along.  Staying the action to allow an appeal would certainly not do

that.  So aside from the general disfavor with which courts ascribe to piecemeal

appeals, the circumstances of this ruling do not warrant certification of this ruling as

final.

---

[22]In fairness to Plaintiffs, their request for a final order may have been premised on complete denial of their request for leave to amend.  The Court, however, cannot know with any certainty whether that is the case.

[23]The civil remedies section of the statute does not differentiate between substantive RICO violations and conspiracy to violate the statute as far as the breadth of relief, i.e., treble damages, attorneys fees and costs.  *See* 18 U.S.C. § 1964(c) (affording aggrieved person treble damages and attorneys fees for "violation of section 1962")

*Summary*

Having analyzed the Chawla Defendants' challenges to the proposed amendments, the Court finds that the arguments as to Counts I, IV and IX are well made.  For that reason, leave to amend those counts will be denied.  The objections to the remaining amendment, however, are not persuasive and will be denied for the reasons set forth, *supra.*

Because of the degree of integration between the allowed and disallowed amendments, as well as the absence of any exigency, the Plaintiffs' request for entry of a final judgment under Rule 54(b) will be denied.

An appropriate Order follows.

By the Court:

_____
Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: <u>December 17, 2009</u>

41