## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 7 |
| | : |
| JAMUNA REAL ESTATE, LLC | : BANKRUPTCY NO. 04-37130 |
| UNITED MANAGEMENT SERVICES, INC. | : BANKRUPTCY NO. 04-37132 |
| BAGGA ENTERPRISES, INC.     DEBTOR(S) | : BANKRUPTCY NO. 04-37136 : |

| | |
|---|---|
| MARVIN KRASNY, IN HIS CAPACITY AS | : |
| CHAPTER 7 TRUSTEE OF UNITED | : |
| MANAGEMENT SERVICES, INC.; | : |
| MARVIN KRASNY, IN HIS CAPACITY AS | : |
| CHAPTER 7 TRUSTEE OF JAMUNA REAL | : |
| ESTATE LLC; GARY SEITZ, IN HIS | : |
| CAPACITY AS CHAPTER 7 TRUSTEE OF | : |
| BAGGA ENTERPRISES, INC., WILMINGTON | : |
| TRUST COMPANY IN ITS CAPACITY AS | : |
| OWNER TRUSTEE OF FL RECEIVABLES | : |
| TRUST 2002-A AND FL | : |
| RECEIVABLES TRUST 2002-A | : |
|                         PLAINTIFFS | : |
|          V. | : |
| | : |
| PRATPAL BAGGA; KHUSHVINDER BAGGA; | : ADV NO. 06-128 |
| ET AL | : ADV NO. 06-129 |
| | : ADV. NO. 06-130 |
|                         DEFENDANTS | : |

# <u>OPINION</u>

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

Before the Court is the Motion of the Defendants for Partial Judgment on the Pleadings. Specifically, the relief requested breaks down into three groups: first, that the substantive RICO claim against Mr. Bagga be dismissed; second, that as a result of dismissal of the RICO claim against Mr. Bagga, all RICO conspiracy claims (must

necessarily) be dismissed; and third, that the state law claim in counts V through VIII

and X must be dismissed as to Mrs. Bagga for failure to state a claim.[1]  The Motion is

opposed by the Plaintiffs.  After a hearing held on October 19, 2010, the Court took the

matter under advisement.  For the reasons which follow, the Motion will be granted in

part and denied in part.

*Ruling*

As to Count I (RICO), the Motion is denied and the Court's prior ruling on this

count is upheld as to Mr. Bagga.

As to Count II (Conspiracy to Violate RICO), the Motion is denied and the Court's

prior ruling as to the RICO conspiracy claim is upheld.

As to Count V (Breach of Fiduciary Duty - Self Dealing), the Motion is denied.

Count V states a claim of self-dealing against Mrs. Bagga.

As to Count VI (Breach of Fiduciary Duty - Preservation of Entity Property), the

Motion is granted in favor of Mrs. Bagga.

As to Count VII (Breach of Fiduciary Duty - Deepening Insolvency), the Motion is

granted in favor of Mrs. Bagga.

As to Count VIII (Aiding/Abetting a Fiduciary Breach), the Motion is denied.

---

[1]For the prior procedural history of this proceeding, *see* 365 B.R. 540 (Bankr.E.D.Pa.
2007) (ruling on Defendant's Motion to Dismiss the original complaint ); 382 B.R. 263
(Bankr.E.D.Pa. 2008) (granting Chawla Defendants' Motion for Partial Summary Judgment on
RICO claims); 385 B.R. 127 (Bankr.E.D.Pa.2008) (denying Chawla Defendants' Motion for
Summary Judgment as to remaining claims); and 392 B.R. 149 (Bankr.E.D.Pa.2008) (denying
Plaintiff's motion for reconsideration of summary judgment as to RICO claims and granting
limited leave to amend complaint); 416 B.R. 412 (Bankr.E.D.Pa. 2009) (granting motion to
dismiss); 2009 WL 5112008 (Bankr.E.D.Pa.) (granting, in part, Plaintiffs' motion for leave to
amend); and 2010 WL 2773395 (Bankr.E.D.Pa.) (dismissing RICO and RICO conspiracy claims
as to Mrs. Bagga)

Count VIII states a claim for aiding or abetting a fiduciary breach against Mrs. Bagga.

As to Count X (Alter Ego), the Motion is granted in favor of Mrs. Bagga.

*Standard for Motion for
Judgment on the Pleadings*

The Court analyzes a motion for judgment on the pleadings via the same standard applicable to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Leone v. Twp. of Deptford*, 616 F.Supp.2d 527, 530-31 (D.N.J.2009) (citing *Turbe v. Gov't of V.I.,* 938 F.2d 427, 428 (3d Cir.1991)). In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege facts that raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007); *see also* Fed.R.Civ.P. 8(a)(2). Courts should disregard the complaint's legal conclusions and determine whether the remaining factual allegations suggest that the plaintiff has a plausible-as opposed to merely conceivable-claim for relief. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949-50 (2009); *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210-11 (3d Cir.2009).[2] While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir.2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997).

---

[2] Indeed, the Third Circuit has reaffirmed the plausibility standard of *Twombly/Iqbal* within the last two weeks. *See West Penn Allegheny Health System, Inc. v. UPMC, et al*, 2010 WL 4840093 at *8 (November 29, 2010 3d Cir.)

*Count I - RICO
against Mr. Bagga*

The first challenge made by the Defendants returns the Court yet again to the

substantive RICO claim.  The Defendants now maintain that upholding the legal

sufficiency of the substantive RICO claim against Mr. Bagga rests on a partially flawed

premise.  The error which they identify in the Court's RICO ruling pertains to that

statute's "pattern" requirement.  That requirement, they say, should be construed much

more narrowly for pleading purposes.  To that end, they suggest that the Court ought to

have followed a line of reasoning offered in a *concurring* opinion to controlling Supreme

Court authority.

*A RICO Pattern*

This Court's finding that a pattern was sufficiently pleaded for RICO purposes

was based on the Supreme Court's opinion in *H.J.,Inc., v. Northwestern Bell Tel. Co.,*

492 U.S. 229, 250, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989).  There, the High

Court explained that a RICO pattern is pleaded with acts both related to each other as

well as continuous at least over a minimum period of time.  This Court found that

Plaintiff had sufficiently alleged that Mr. Bagga had committed at least three types of

racketeering acts which were all part and parcel of an integrated scheme to defraud.

That rendered his racketeering acts related.  Mr. Bagga alleged to have piloted this

enterprise via these frauds and other wrongdoings  over a three year period.  This is a

considerable enough span of time to be called continuous.  On that basis the Court

found that Mr. Bagga engaged in a pattern of racketeering activity.  *See* 2010 WL

4

2773395 at ** 8-9 (July 13, 2010 Bankr.E.D.Pa.)

Against this ruling, the Defendants would have the Court define pattern for purposes of RICO much more narrowly.  They rely on Justice Scalia's concurrence in *H.J., supra*, wherein he questioned the constitutionality of the majority's pronouncement on what constituted a RICO pattern.  *Id.* at 251-252.  Justice Scalia's objection to that part of the majority's opinion was premised on vagueness.  The Defendants here ask this Court to adopt that concurring interpretation and dismiss the RICO claim against Pratpal Bagga.

*H.J.'s RICO Pattern*
*Enunciation and Precedent*

Any request to rule in contravention of established law implicates fundamental decisional concerns.  Both the federal and state court systems in the United States adhere to the policy of *stare decisis*.  This principle states that it is the policy of courts to stand by precedent and not disturb settled points of law.  Generally, the principle of *stare decisis,* and the interests that it serves, viz., "the evenhanded, predictable, and consistent development of legal principles, ... reliance on judicial decisions, and ... the actual and perceived integrity of the judicial process," *Payne v. Tennessee,* 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991), counsel strongly against reconsideration of precedent.  Nevertheless, the Supreme Court has always treated *stare decisis* as a "principle of policy," *Helvering v. Hallock,* 309 U.S. 106, 119, 60 S.Ct. 444, 451, 84 L.Ed. 604 (1940), and not as an "inexorable command," *Payne,* 501 U.S., at 828, 111 S.Ct., at 2609. "[W]hen governing decisions are unworkable or are badly

5

reasoned, the High Court has never felt constrained to follow precedent." *Id.,* at 827,

111 S.Ct., at 2609 (quoting *Smith v. Allwright,* 321 U.S. 649, 665, 64 S.Ct. 757, 765, 88

L.Ed. 987 (1944)).

The Third Circuit has explained precedent as follows:

> A judicial precedent attaches a specific legal consequence
> to a detailed set of facts in an adjudged case or judicial
> decision, which is then considered as furnishing the rule for
> the determination of a subsequent case involving identical or
> similar facts and arising in the same court or a lower court in
> the judicial hierarchy.

*Allegheny Gen. Hosp. v. NLRB,* 608 F.2d 965, 969-970 (3d Cir.1979) (overruled on

other grounds, *St. Louis Margaret Mem. Hosp. v. NLRB*, 991 F.2d 1146 (3d cir. 1993).

To become precedent, the point of law must be agreed upon by a majority[3] of the court

ruling on the matter.[4] Mere concurrence in the result, and not the legal issue, is

insufficient to establish precedent.  *See, e.g., Maryland v. Wilson*, 519 U.S. 408, 412-

413, 117 S.Ct. 882, 885 (1997).  A concurring opinion, while persuasive, is not binding.

*See United States v. Reynard,* 473 F.3d 1008, 1021 (9th Cir. 2007).  Simply put, this

---

[3]Multimember courts in the common law tradition have resolved matters on majority
grounds as a longstanding matter.  *See* Jonathan Remy Nash, *The Majority That Wasn't: Stare
Decisis, Majority Rule, and the Mischief of Quorum Requirements*, 58 Emory L.J. 831, 850 (2009)
(observing that "[m]ajority rule is as old as it is widespread and that "courts in the United States
(and beyond) have almost always employed majority rule.") "Resolution of cases--that is,
whether the appellate court will affirm, reverse, remand, or vacate the lower court's judgment--is
almost always decided by a majority of sitting judges."  *Id.* at 850-851*; see also* Brett W. King,
*Deconstructing Gordon and Contingent Legislative Authority: The Constitutionality of
Supermajority Rules*, 6 U. Chi. L. Sch. Roundtable 133, 181-82 (1999) ("Simple majority rule is
the historical rule followed in almost all cases for hundreds of years ...."); id. at 180 (noting that,
at the time of the constitutional convention, "almost all decisions in legislative bodies such as
the British Parliament and Colonial assemblies were taken by majority vote")

[4]In the United States Supreme Court, a quorum of the Court consists of at least six
members.  *See*  28 U.S.C. § 1

Court is bound by *H.J.* as controlling authority.

Justice Scalia's concurring opinion, 429 U.S. at 251, took issue with the High

Court's standard for pleading a racketeering pattern.  The concurrence saw that

standard as lacking the requisite certainty for constitutional fairness.  *Id.*  Because that

concurrence is at odds with the majority's holding on that point, it is without controlling

force.  Accordingly, the Defendants' request that we depart from the applicable rule of

decisions must be rejected as a matter of law.

*RICO Patterns, Vagueness*
*and Recent Authority*

Undeterred, the Defendants bring to the Court's attention what it considers to be

a trend in related jurisprudence.  They offer recent Supreme Court authority from a

different context to support their position on pleading a RICO pattern.  In *Skilling v.*

*United States*, 130 S.Ct. 2896 (2010), the High Court was confronted with a challenge

to a different but related statute on vagueness grounds.  In that case, the defendant

appealed his conviction under the "honest services statute," 18 U.S.C. § 1346.  This

statute declares illegal any "scheme or artifice to deprive another of the intangible right

of honest services."  *Id*.  It was applied to Jeffrey Skilling, an officer of Enron

Corporation, who was charged with deceiving investors by manipulating publicly

reported financial information and by making false and misleading representation about

the company's health.  Skilling asserted that such a statute was unconstitutionally

vague.  *See Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d

903 (1983) (requiring that "a penal statute define the criminal offense with sufficient

definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.") The Supreme Court found that because Congress had limited the honest services statute to bribery and kickback schemes, Skilling's alleged conduct, if true, was not embraced by the statute. To find otherwise, the High Court concluded, ran afoul of the vagueness requirement.

The Defendants in this case would have this Court "transplant" the reasoning in *Skilling* to the instant case. Defendants' Brief, 15. They explain that just as the *Skilling* Court limited the "honest services statute" to bribery or kickbacks, the RICO pattern requirement must likewise be circumscribed so as to avoid vagueness questions. The intent of Congress in drafting RICO, they say, was to combat organized crime. In keeping with that purpose, then, a narrow, specific definition of "pattern" is consonant with the statute. But is that what the legislative history shows?

According to *H.J.* the answer is no. "Congress for cogent reasons chose to enact a more general statute, one which, although it had organized crime as its focus, was not limited in application to organized crime." *H.J., supra*, 492 U.S. at 248, 109 S.Ct. at 2905. It "realized that the stereotypical view of organized crime as consisting in a circumscribed set of illegal activities, ...was no longer satisfactory because criminal activity had expanded into legitimate enterprises." *Id*. Thus, the statute's breadth would "respond[ ] to a new situation in which persons engaged in long-term criminal activity often operate *wholly* within legitimate enterprises." *Id*. "Congress drafted RICO broadly enough to encompass a wide range of criminal activity, taking many different

8

forms and likely to attract a broad array of perpetrators operating in many different ways." *Id*. at 428-429.  So contrary to Defendants' premises, the Supreme Court opined that "[i]t would be counterproductive and a mis-measure of congressional intent now to adopt a narrow construction of the statute's pattern element that would require proof of an organized crime nexus." *Id*. at 429.  Recent Supreme Court authority involving RICO claims has reaffirmed that RICO's provisions are to be interpreted broadly.  *See Boyle v. United States*, 129 S.Ct. 2237, 2243 (2009) (noting that the "very concept of an association in fact under RICO is expansive"); *see also In re Insurance Broker Antitrust Litigation*, 618 F.3d 300, 366 (3d Cir.2010) (observing that the High Court in *Boyle* "[r]ejected several proposed ways of cabining the definition of an enterprise.")

In *H.J., supra*, Justice Brennan articulated what was required to be pleaded to state a RICO pattern.  No one would dispute that pleading a RICO pattern is complicated; however, that does not mean that it is impossible or "unworkable."  It is, as the *H.J.* court noted, fact specific but given the right arrangement of those facts, a RICO pattern may be alleged.  The Plaintiffs' previous iterations of the substantive RICO claim are a testament to that: in some cases, the cause of action was not established to some of these defendants, but successfully set forth as to others.  Given the right set of facts, a RICO pattern may be set forth which sufficiently notifies the alleged RICO defendant of the acts he or she committed which form a pattern.  There is no reason then to adopt a pleading standard in contravention of Supreme Court precedent.  The Defendants' challenge to Count I will be denied.

*Count II - Conspiracy*
*to Violate RICO*

The second challenge made by the Defendants depends on a successful

outcome of the first: They argue that as a result of the dismissal of the substantive

RICO claim against Mr. Bagga, no claim of conspiracy to commit RICO lay against *any*

of the Defendants.   That premise, of course, is belied by the Court's ruling, *supra*,

upholding  the substantive RICO claim.   Yet even if it were not, the RICO conspiracy

claims would not have to be dismissed merely because no substantive claim had been

stated as to Mr. Bagga.   The RICO conspiracy statute prohibits conspiracies to violate

"any of the provisions of subsection (a), (b), or (c) of [§ 1962]." *See* 18 U.S.C. §

1962(d).   This language allows for the possibility that two or more persons agreed to

violate the act without having actually engaged in the requisite racketeering.   *Smith v.*

*Berg*, 247 F.3d 532, 536-537 (3d Cir. 2001) (noting that a person need not be guilty of

having committed a substantive violation of RICO in order to have *conspired* to do so).

Accordingly, the Defendants' challenge to the legal sufficiency of Count II of the SAC

must be denied.

*State Law Claims*
*Against Mrs. Bagga*

The Defendants' final challenge returns to the question of whether certain claims

have been sufficiently pleaded as to one of the Defendants.   They argue here that the

claims in Counts V (Breach of Fiduciary Duty - Self Dealing), VI (Breach of Fiduciary -

Duty/Preservation of Entity Property), VII (Breach of Fiduciary Duty - Deepening

10

Insolvency), VIII (Aiding and Abetting Fiduciary Breach) and X (Alter Ego) fail to state a

claim against *Mrs*. Bagga.  The principal failure of such claims derives, they say, from

the effect of the Court's February 2008 Opinion in this case.  *See* 382 B.R. 263

(Bankr.E.D.Pa.2008).  That ruling found that Plaintiffs did not have standing to sue

Defendants under RICO for harms sustained prior to September 2002.  *Id.* at 277.

That date is the date upon which Plaintiffs purchased the underlying loans from Captec.

The Court found in that opinion that when Captec assigned the loans to Plaintiffs, it

failed to also convey rights in Captec's legal claims.  Although that opinion was limited

to Defendants' challenge to the RICO counts, this Court's March 2009 ruling extended

that ruling to other causes of action.  416 B.R. 412, 433 (Bankr.E.D.Pa.2009).  So to the

extent that the state law claims against Mrs. Bagga are based on acts which occurred

before Captec assigned the loans to Plaintiff, they fail for a lack of standing.  Plaintiffs

argue that they may build their case–in part at least— on facts which might be

otherwise time-barred to support a different, timely claim.  *See* Transcript of Hearing,

10/19/10, at 14.  As discussed herein, the Court agrees.  However, Plaintiff cannot, in

the course of "building its case," revive time barred claims.

*Fiduciary Status*
*and Mrs. Bagga*

As Counts V through VII are based upon Mrs. Bagga being a fiduciary, the Court

turns to whether the SAC imbues her with such status.  The parties will recall that this

same challenge was made as to the original Complaint.  At that time, the Court found

that although *Mr.* Bagga was the sole officer and director of the Bagga companies, *Mrs.*

Bagga was sufficiently alleged to be a *de facto* fiduciary given her check-writing ability

and other financial powers which she exercised.  *See* 365 B.R. 540 571

(Bankr.E.D.Pa.2007).  Much the same appears in the SAC.  As before, Mr. Bagga is the

sole officer/director of the Bagga Companies as well as the sole shareholder.  *See*

SAC, ¶¶ 12-14, 17.  As to *Mrs.* Bagga, the SAC explains that she

> was significantly involved in the management and financial
> affairs of the Bagga Companies through her work for United
> Management.  For example, Mrs. Bagga maintained
> payment authority over the Bagga companies' accounts,
> together with her husband decided which of the Bagga
> Companies" bills would be paid, and when, used a signature
> stamp with her name on its to sign checks on the
> Companies' behalf and, with her husband, caused the
> Debtors to engage in the unlawful conduct set forth below.

SAC, ¶ 21.  In other words, Mrs. Bagga had discretion to determine where money of the

Bagga companies would go.  In practice, at least, the SAC ascribes to her duties that

would be characteristic of a fiduciary.

*Fiduciary Obligations*
*as to the Plaintiffs*

A point of law unmentioned by the parties is the extent to which any fiduciary

duty might be owed to these Plaintiffs at all.  This implicates standing—yet again—

although on a different basis.  Because questions of standing are akin to subject matter

jurisdiction, they must be considered sua sponte.  *Miller v. Dutil (In re Total*

*Containment, Inc.*), 2008 WL 682455 at *9 n.11 (March 5, 2008 Bankr.E.D.Pa.).

Typically, a fiduciary duty runs from the responsible person to the shareholders or

owners of a corporation.  *See* 15 P.S. § 512; *see also Miller v. Dutil (In re Total*

12

*Containment, Inc.)*, 335 B.R. 589, 602 (Bankr.E.D.Pa.2005).  That duty will be extended

to creditors of a corporation which has become insolvent*.  Id. citing Voest-Alpine*

*Trading USA v. Vantage Steel Corp.*, 919 F.2d 206, 209 (3d Cir. 1990).  It is alleged in

Count V of the SAC that the Debtor corporations are insolvent.  *See* SAC, ¶ 118.

Accordingly, the Court finds that the SAC alleges a fiduciary duty owed by Mrs. Bagga

to the Plaintiffs.

*Alleged Fiduciary*
*Violations*

For a fiduciary to be found liable in the exercise of its powers, there must be a

showing of fault, in the form of bad faith, or negligence on the part of the fiduciary.

*Leckey v. Stefano*, 501 F.3d 212, 224 (3d Cir. 2007).  Mere mistake in exercising that

authority will not render it liable for the resulting loss.  *Id*.  As a fiduciary, Mrs. Bagga is

alleged to have failed to meet her attendant duties in three ways.  First, she is charged

in Count V with self-dealing.  This is alleged to have involved her failure to monitor

company funds, her utilization of funds for personal use, and her failure to comply with

corporate formalities.  ¶ 118.  Next, she is alleged in Count VI to have dissipated entity

property by transferring company funds to Ravinder Chawla without intending or

attempting to be repaid.  ¶ 121.  Finally, Count VII charges her with having deepened

the insolvent state of the Bagga Companies by transferring assets of these entities.  ¶

124.  To the extent, then, that there is no other circumstance limiting the fiduciary

claims as to Mrs. Bagga, the SAC would appear to state such claims against her.

As it turns out, however, the limiting circumstance is the Plaintiffs' standing.  The

13

Defendants maintain that the Plaintiffs were not in privity at the time of the alleged misconduct on Mrs. Bagga's part—fiduciary or otherwise. As alleged, Captec, not the Plaintiffs, was victim of the alleged wrongdoing of Mrs. Bagga until September 2002. Plaintiffs disagree and argue that the Court must look back in time to assess the entire period at issue or what they characterize as the "arc of the whole scheme" to determine if a cause of action exists. T-14. In particular, they point out that the span of the scheme begins at the loans' inception (2000) and has continued into 2006. T-15. Thus, the Court may not ignore events that occurred prior to the date of the assignment. *Id*.

The Plaintiffs' argument misses the point. The analysis of the viability of the state law claim is guided by its elements. Two of the key elements are, of course, a breach and resulting harm. A breach is a discrete act. The Court need not look back over a certain period of time to determine if a breach occurred. Once the Court finds a breach properly alleged, it must ascertain if a plaintiff was harmed by it. In this case, Plaintiffs were not harmed by anything that the Defendants did from late 2000 until September 2002: Captec was. That is not to say that the Court will ignore any allegation pertaining to events prior to that time. It takes as relevant the SAC's characterization of Mrs. Bagga's status as a fiduciary. But what matters for purposes of Plaintiffs' standing are predicates. The conduct which constitute actionable breaches must have occurred on the Plaintiffs' watch. If it did not, then the Plaintiff has no standing to base a claim on it. How much of what is alleged in this regard involves conduct which occurred prior to September 2002?

14

*Preservation Entity Property/*
*Deepening Insolvency*

The SAC alleges fiduciary failings on Mrs. Bagga's part which occurred before

Plaintiffs purchased the loans from Captec (September 2002).   Mrs. Bagga's first

alleged instance of self-dealing—receipt of checks from the Captec loans totaling

$470,000—occurred in September and December 2000.  ¶ 32(a).  The same goes for

the alleged transfers by "the Baggas" to Ravinder Chawla and his companies.  ¶¶ 33,

34.  It also applies to the alleged transfers which "the Baggas" made in order to deplete

the Bagga Companies of assets as well as to enrich themselves.  ¶¶ 35, 36, 121.  This

likewise had the effect of rendering already insolvent companies even more so.  ¶ 124.

All of this was directed at defrauding Captec and not the Plaintiff.  So the two counts

based on the Baggas having transferred the Debtors' assets to Ravinder Chawla

(Count VI - Preservation of Entity Property) or elsewhere (Count VII - Deepening

Insolvency) belong to Captec and the not the Plaintiff.  What follows from that fact is

that Plaintiff lacks standing to press those two claims.

*Self-Dealing*

That leaves Count V.  Unlike Counts VI and VII, it is broader in two senses.

First, it is not based exclusively on the Baggas having transferred assets in violation of

their duties as fiduciaries: It also alleges fiduciary failings that could encompass the

wrongful *receipt* of such funds.  Second, and more importantly, if this count may fairly

be read that way, then it would include breaches which occurred after the Plaintiffs had

15

purchased the loans from Captec.  Specifically, the SAC alleges that in 2005 and 2006,

Ravinder Chawla transferred $1.8 million to the Baggas individually or to their creditors.

*See* ¶ 54.  This money, it is further alleged, has a history: It is the same money and/or

proceeds of funds previously transferred in 2000 and 2001 by United Management to

World Apparel.  *Id*.  These funds derive from the original Captec loans to the Bagga

companies. *See* ¶ 33.  Thus, if she is alleged to have received such money, then Mrs.

Bagga *qua* fiduciary was duty bound to turn it over to the corporation.[5]  Failure to have

done so would demonstrate self-dealing on her part.  Is she alleged to have done that?

        The SAC can be fairly read to allege that she did.  Of the 13 transfers which Mr.

Chawla made in 2005/2006, one check in the amount of $100,000 was given to Mr.

Bagga and the other twelve to various third parties.  While there is no allegation as to

what Mr. Bagga did with that money, the SAC makes clear that Mrs. Bagga was

involved in the financial management of his companies' accounts.  It is reasonable to

assume that Mrs. Bagga enjoyed the use of this money with her husband.  As she is a

fiduciary, that would constitute self-dealing.  Admittedly, the allegations are somewhat

thin in this regard; however, they are sufficiently plausible to withstand a motion to

dismiss.  In short, the SAC states a claim against her for self-dealing.

*Aiding and Abetting*
*a Fiduciary Breach*

        The Plaintiffs do not limit their state law claims to fiduciary failings but seek to

recover against those persons who may have aided or abetted a fiduciary breach.  *See*

---

[5]Or, since bankruptcy had already been commenced, to the trustee

16

SAC, Count VIII.  The Court's April 2007 opinion concluded that Pennsylvania would

recognize a cause of action for knowingly assisting a fiduciary breach.  *See* 365 B.R. at

573.  There, this Court also set forth the required elements: (1) a breach of fiduciary

duty owed to another; (2) knowledge of the breach by the aider or abettor; and (3)

substantial assistance or encouragement by the aider or abettor in effecting that

breach.  *Id.*, citing *Adena v. Cohn*, 162 F.Supp.2d 351, 357 (E.D.Pa.2001).  What does

the SAC allege as to Mrs Bagga in this regard?

As one possessing payment authority over the Bagga Companies' accounts,

Mrs. Bagga was well-situated to assist her husband in his various misdeeds.  ¶ 21.  Her

movement of the original Captec loan proceeds (¶¶ 32-38) as well as her presumed

involvement in the receipt of laundered funds as late as 2005/2006 (¶¶ 54-55) would

tend to demonstrate that she knowingly assisted her husband in the alleged ongoing

frauds.  In sum, the SAC states an aiding or abetting claim against Mrs. Bagga.

*Veil-Piercing, Alter Ego*
*Claim against Mrs. Bagga*

The final challenge leveled by Mrs. Bagga pertains to the SAC's last count.

Count X is entitled the "Action to Declare the Baggas Liable for the Corporate Debts of

the Debtors."  Such a claim traditionally goes by various names: either as one to "pierce

the corporate veil" as to the Baggas or to deem them "alter egos" of the Debtor

corporations.  *See In re Appeal of Community Gen. Hosp.*, 708 A.2d 124, 130

(Pa.Commw.Ct.1998) (same).  It recognizes that under certain circumstances, a court

may disregard the general rule that a corporation shall be regarded as an independent

17

entity. *See Lumax Indus., Inc. v. Aultman,* 543 Pa. 38, 42, 669 A.2d 893, 895

(Pa.1995). The factors to be considered when deciding whether to pierce the corporate

veil are: 1) insufficient capitalization; 2) intermingling of funds; 3) non-functioning

officers and directors; 4) absence of corporate formalities; 5) failure to pay dividends;

and 6) outward representation of sole proprietorship as opposed to incorporation. *See*

*Village at Camelback Property Owners Assn. Inc. v. Carr,* 371 Pa.Super. 452, 461, 538

A.2d 528, 533 (Pa.Super.Ct.1988). In essence, what these factors boil down to is the

exercise of control by the individuals over the corporate entity. *Lumax, supra* 669 A.2d

at 895. Moreover, this domination must be complete and must have been exercised for

the individual's personal benefit. *Ashley v. Ashley*, 482 Pa. 228, 237, 393 A.2d 637,

641 (1978). As the *Camelback* Court explained, "[i]n deciding whether to pierce the

corporate veil, courts are basically concerned with determining if equity requires that the

shareholders' traditional insulation from personal liability be disregarded and with

ascertaining if the corporate form is a sham, constituting a facade for the operations of

the dominant shareholder." *Id*. Thus, the corporate veil will be pierced on a showing of

injustice, rather than fraud. *See Lycoming County Nursing Home Assn., Inc. v.*

*Commonwealth, Dept. of Labor and Industry,* 156 Pa.Cmwlth. 280, 291, 627 A.2d 238,

244 (Pa.Commw.Ct.1993). Under Pennsylvania law, claims to pierce the corporate veil

are evaluated applying the notice pleading standard of Rule 8(a), unless fraud is a

necessary element of the claim. *Motorola, Inc. v. Airdesk, Inc.*, 2005 WL 894807 at *2

(April 15, 2005 E.D.Pa.) citing *Laborers v. Ruscitto*, 848 F.Supp. 598, 600 (W.D.Pa.

1994) This general rule is consistent with the principle that Rule 9(b) should be

18

"construed narrowly and not extended to other legal theories or defenses."  Wright &

Miller, *Federal Practice and Procedure: Civil 3d* § 1297 (1990).

*Mrs. Bagga and
Corporate Abuse*

As a general matter, Count X sets forth at least the background circumstances

for disregarding the corporate form.  The financial record keeping for the corporations is

at best deficient and at worst non-existent.  ¶ 141.  The corporations are thinly

capitalized.  ¶ 142.  Funds are alleged to have moved about among the various

companies with such frequency and abandon to have rendered their separate corporate

existence meaningless.  ¶ 149.  Corporate formalities are alleged to be ignored.  ¶ 140.[6]

For an officer/director as well the sole shareholder of those businesses, these

allegations provide a necessary foundation from which the Court might deem it just to

ignore the corporate form.  Mrs. Bagga, however is neither owner nor officer; she is, at

best, an employee of one of the Debtors.  Without more, responsibility for the above-

cited corporate derelictions cannot under a veil piercing theory be ascribed to her.

There must be some independent allegation of control on her part which she exercised

to benefit herself personally and to the detriment of the corporations' creditors.  That is

the object of the analysis which follows.

In the discussion, *supra*, regarding the sufficiency of the fiduciary breach claims,

it was observed that Mrs. Bagga is alleged to have had a significant role in the

management and financial affairs of those companies.  This was achieved, the SAC

---

[6]Because all three corporations are owned solely by Mr. Bagga who serves as the sole
director or officer for each, the failure to pay dividends is not significant.

explains, through her work for the Debtor United Management.[7]  ¶ 21.  For that entity,

she maintained payment authority over the companies' accounts, decided which bills to

pay and signed company checks.  *Id*.  In seeking to disregard the corporate status vis-

a-vis, her, Count X alleges generally that "on several occasions, [she] withdrew funds

for her own benefit from the commingled United Management account and the

accounts of the other Bagga companies, [ ] of which she was not an officer owner or

employee" ¶ 144.  What *specific* examples of such abuse does the SAC offer?

     Her first discrete act is alleged to be the receipt from the Captec loan proceeds

of checks totaling $470,000 (September, December 2000).  *See* SAC ¶ 32(a).  Next

come a series of allegations that "the Baggas" funneled some of these same loan

proceeds to Mr. Chawla's company.  ¶¶ 33, 34.  At the same time they enriched

themselves by using the same money to repay fictional shareholder loans to the Debtor

corporations.  ¶ 36.  This conduct is alleged to have continued to the present time.  ¶

38.  The last alleged conduct on her part is that she and her husband received

laundered funds from Mr. Chawla in 2005 and 2006.  ¶ 55.

     For the majority of these allegations, *when* they occurred is highly significant.  All

but one of the above-cited allegations of conduct predate when Captec sold the loans

to the Plaintiff.  *See, e.g.* ¶¶ 32-34, 36.  Thus, for reasons already discussed, Plaintiffs

lack standing to base a claim on them.  The lone allegation that she received funds

*after* the Captec assignment, (¶ 55, transfers of laundered funds from R. Chawla in

---

[7]The SAC explains that United Management was the entity through which all of the cash
of the Debtor corporations flowed.  SAC ¶ 14

2005/2006) is vague and bereft of detail.[8]  There are no supporting allegations from

which the Court might conclude it fair to transpose liability from the corporation to Mrs.

Bagga.  This allegation refers to her collectively with her husband.  Yet unlike her

husband,[9] there is no allegation that she was anything other than a passive recipient.

The circumstances of this last transfer, as alleged, do not justify assessing corporate

liability against Mrs. Bagga.[10]  Accordingly, Count X will be dismissed as to her.

*Summary*

For the reasons which have been expressed in the preceding opinion, the Court

will grant the Defendants' motion in part and will deny it in part.

An appropriate order follows.

By the Court:

_____
Stephen Raslavich
Chief United States Bankruptcy Judge

Dated:  December 7, 2010

---

[8]It must be remembered that *none* of the payments were made to her personally and, to the extent that the payments were made to corporations, it must be remembered that Mrs. Bagga is not an officer, director or shareholder of any of the corporations.

[9]Throughout the SAC, Mr. Bagga is the principal actor in this narrative.

[10]In the final analysis, the Court in retrospect finds this particular claim as to Mrs. Bagga peculiarly ill-conceived as a legal matter. The alter ego/veil piercing doctrine is intended to thwart officers and shareholders who attempt to insulate themselves from liability by improperly relying on the existence of a corporation.  As Mrs. Bagga is neither an officer nor an owner of the corporate defendants, wrongdoing on her part would arguably not be shielded from attack, and indeed, has not been shielded from attack under other common law theories advanced by Plaintiffs.

21