# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 7 |
| | : |
| JAMUNA REAL ESTATE, LLC | : BANKRUPTCY NO. 04-37130 |
| UNITED MANAGEMENT SERVICES, INC. | : BANKRUPTCY NO. 04-37132 |
| BAGGA ENTERPRISES, INC. | : BANKRUPTCY NO. 04-37136 |
| DEBTOR(S) | : |
| | |
| MARVIN KRASNY, IN HIS CAPACITY AS | : |
| CHAPTER 7 TRUSTEE OF UNITED | : |
| MANAGEMENT SERVICES, INC.; | : |
| MARVIN KRASNY, IN HIS CAPACITY AS | : |
| CHAPTER 7 TRUSTEE OF JAMUNA REAL | : |
| ESTATE LLC; GARY SEITZ, IN HIS | : |
| CAPACITY AS CHAPTER 7 TRUSTEE OF | : |
| BAGGA ENTERPRISES, INC., WILMINGTON | : |
| TRUST COMPANY IN ITS CAPACITY AS | : |
| OWNER TRUSTEE OF FL RECEIVABLES | : |
| TRUST 2002-A AND FL | : |
| RECEIVABLES TRUST 2002-A | : |
| PLAINTIFFS | : |
| V. | : |
| | : ADV NO. 06-128 |
| PRATPAL BAGGA; KHUSHVINDER BAGGA; | : ADV NO. 06-129 |
| ET AL | : ADV NO. 06-130 |
| DEFENDANTS | : |

# OPINION

By: Stephen Raslavich, Chief United States Bankruptcy Judge.

*Introduction*

  Before the Court is the Defendants' Motion for Partial Summary Judgment. The Motion is opposed by the Plaintiffs. A hearing on the motion was held on October 29, 2011. After the hearing, the Court took the matter under advisement.

*Summary of Holding*

  The Defendants' motion for partial summary judgment will be denied in part and

granted in part:

    Count I - RICO (Plaintiffs against Pratpal Bagga)

- Basis for Request: Mr. Bagga maintains that the underlying transaction involved a sale of securities and is, therefore, exempt from RICO.

- Holding: The evidence does not demonstrate that a sale of securities occurred and so the request for summary judgment as to this count will be denied.

    Count II - Conspiracy to Violate RICO (Plaintiffs against All Defendants except Khushvinder Bagga)

- Basis for Request: The Defendants argue that because summary judgment should be granted in Mr. Baggas favor as to Count I, the RICO conspiracy count must likewise fail. Sant Properties also maintains that judgment should be entered in its favor because no injury is demonstrated to have resulted from its conduct.

- Holding: The denial of summary judgment as to Count I renders moot the Defendants' request as to Count II. As to Sant Properties specifically, the Plaintiffs have offered evidence demonstrating harm resulting from Sant's participation in money laundering. That request, accordingly, will also be denied.

    Count IV - Fraud and Conspiracy to Commit Fraud (Plaintiffs against Pratpal Bagga)

- Basis for Request: Mr. Bagga maintains that this cause of action has been waived or that it is otherwise time-barred.

- Holding: The Court finds that the allegations of fraud and conspiracy to defraud are neither waived nor time-barred. Mr. Bagga's request as to Count IV will, therefore, be denied.

    Count V - Breach of Fiduciary Duty (Self-Dealing) (Plaintiffs v. Pratpal and Khushvinder Bagga)

- Basis of Request: Mr. and Mrs. Bagga maintain that this Count is time-barred.

- Holding: The Court agrees that this count is time-barred; therefore, the Defendants' Motion will be granted as to Count V.

    Count VI - Breach of Fiduciary Duty (Preservation of Entity Property) (Plaintiffs v. Pratpal Bagga)

- Basis of Request: Mr. Bagga maintains that this count is time-barred.

- Holding: The Court agrees that this count is time-barred; therefore, Mr. Bagga's Motion will be granted as to Count VI.

    Count VII Breach of Fiduciary Duty (Deepening Insolvency) (Plaintiffs v. Pratpal Bagga)

- Basis of Request Mr. Bagga maintain that this count is time-barred.

- Holding: The Court agrees that this count is time-barred; therefore, Mr. Bagga's Motion will be granted as to Count VII.

    Count VIII - Aiding and Abetting a Breach of Fiduciary Duty (Plaintiffs vs. all Defendants except Pratpal Bagga)

- Basis for Request.  All affected defendants maintain that this count is time-barred.

- Holding: The Court agrees that this count is time-barred; therefore, the Defendants' Motion will be granted as to Count VIII.

*Background*

After this court granted Plaintiffs leave to file a Second Amended Complaint (SAC), Mr. and Mrs. Bagga filed two separate motions to dismiss.  Rulings on these motions succeeded in limiting the number of claims, but only as to Mrs. Bagga.  *See In re Jamuna Real Estate*, LLC, 2010 WL 2773395 (Bankr.E.D.Pa. July 13, 2010) (dismissing Mrs. Bagga from the RICO counts) and 445 B.R. 490 (Bankr.E.D.Pa. 2010) (dismissing Mrs. Bagga from two of the three breach of fiduciary duty claims as well as the alter ego count).  In its present iteration, the SAC contains 10 counts, 9 of which are directed either solely at Mr. Bagga, individually, or against him and other defendants.

Mrs. Bagga remains the subject of three counts (V - Breach of Fiduciary Duty for Self-Dealing, VIII - Aiding and Abetting a Fiduciary Breach, and IX - Fraudulent Transfer). Ravinder and Hardeep Chawla are defendants as to 2 counts (II RICO conspiracy and VIII - Aiding and Abetting a Fiduciary Breach)

*Standard for Summary Judgment*

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure[1] ("Fed.R.Civ.P."). Pursuant to Rule 56, summary judgment should be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). For purposes of Rule 56, a fact is material if it might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of demonstrating that no genuine issue of fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).

The court's role in deciding a motion for summary judgment is not to weigh evidence, but rather to determine whether the evidence presented points to a disagreement that must be decided at trial, or whether the undisputed facts are so one sided that one party must prevail as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249-252, 106 S.Ct. at 2510-12. In making this determination, the court must consider all of the evidence presented, drawing all reasonable inferences

---

[1] Made applicable to adversary proceedings by B.R. 7056.

therefrom in the light most favorable to the nonmoving party, and against the movant. *See United States v. Premises Known as 717 South Woodward Street*, 2 F.3d 529, 533 (3rd Cir.1993); *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991); *Gould, Inc. v. A & M Battery and Tire Service*, 950 F.Supp. 653, 656 (M.D.Pa.1997).

To successfully oppose entry of summary judgment, the nonmoving party may not simply rest on its pleadings, but must designate specific factual averments through the use of affidavits or other permissible evidentiary material that demonstrate a triable factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553. Such evidence must be sufficient to support a jury's factual determination in favor of the nonmoving party. *Anderson, supra,* 477 U.S. at 250, 106 S.Ct. at 2511. Evidence that merely raises some metaphysical doubt regarding the validity of a material fact is insufficient to satisfy the nonmoving party's burden. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). If the nonmoving party fails to adduce sufficient evidence in connection with an essential element of the case for which it bears the burden of proof at trial, the moving party is entitled to entry of summary judgment in its favor as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. at 322-23, 106 S.Ct. at 2552-53.

*Count I-RICO*

Mr. Bagga is the sole defendant in Count I. That claim charges him with having violated the federal racketeering statute. *See* 18 U.S.C. § 1962(c). In this Motion, Mr. Bagga challenges this claim not on the basis that he did not engage in racketeering conduct. Rather, he argues that, even if the Plaintiffs' allegation were proven, the type

5

of conduct involved is excluded from liability under RICO. He contends that his alleged racketeering involved securities fraud, which is expressly excepted from RICO:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, *except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.*

18 U.S.C. § 1964(c). The Plaintiffs dispute the contention that this exception applies to the notes at issue. For that interpretation, they rely principally on the Supreme Court's decision in *Reves v. Ernst & Young*, 494 U.S. 56, 110 S.Ct. 945 (1990) and the cases which have followed it.

Federal securities law broadly defines the term "security." *Reves*, 494 U.S. at 61, 110 S.Ct. at 949. That definition includes, inter alia, "any note ... unless the context otherwise requires." See *Fulton Bank v. McKittrick & Briggs Securities, Inc.* 1990 WL 126179, at *3 (E.D.Pa. Aug. 27, 1990) quoting 15 U.S.C. §§ 77b(1), 78c(10). The Court in *Reves* held that notes issued in an investment context are "securities" while notes issued in a commercial or consumer context are not. *Reves*, 494 U.S. at 61, 110 S.Ct. at 950, 110 S.Ct. at 63. To reach its decision, the *Reves* Court adopted a variation of the Second Circuit's "family resemblance" test which presumes that every note is a security.[2] This presumption may be rebutted only upon a showing that the note falls within one of six judicially-crafted exceptions or bears a "family resemblance" to a

---

[2] *See Exchange Nat. Bank v. Touche Ross & Co.,* 544 F.2d 1126, 1137–38 (2d Cir.1976).

6

particular exception. *Fulton Bank, supra, id.* These exceptions are:

>(1) Notes delivered in consumer financing;
>
>(2) Notes secured by a mortgage on a home;
>
>(3) Short term notes secured by a lien on a small business or some of its assets;
>
>(4) Notes evidencing a "character" loan to a bank customer;
>
>(5) Short term notes secured by an assignment of accounts receivable; and
>
>(6) Notes that simply formalize an open-account debt incurred in the ordinary course of business, particularly if it is collateralized.

*Id*. quoting Reves, 494 U.S. at 64, 110 S.Ct. at 951 quoting *Exchange Nat. Bank, supra*, at 1138.

A note might relate to one of the listed exceptions when viewed against the backdrop of four factors:

>First, a court must examine the transaction to assess the motivations that would prompt a reasonable seller and buyer to enter into it. If the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments, and the buyer primarily seeks profit, then the instrument is likely to be a security. Second, a court must examine the "plan of distribution" to determine whether there is common trading for speculation or investment in the instrument. If so, it is more likely to be a security. Third, a court must examine the reasonable expectations of the investing public to determine if the instrument is generally regarded as a security. Fourth, a court must examine whether some other factor, such as the existence of another regulatory scheme, significantly reduces the risk of the instrument, thereby rendering application of the securities laws unnecessary.

*Fulton Bank, supra,* 1990 WL 126179, at *3 quoting *Reves*, 494 U.S. at 66, 110 S.Ct. at

951-952.

Nothing about any of the loans at issue supports Mr. Bagga's claim that the notes constitute securities. The five instruments at issue were mortgage and equipment loans. The Defendants obtained this financing for their fast-food businesses. In providing this financing, Captec was not an investor in the companies but merely a commercial lender. Its return on the loans was limited to interest over the life of the loans. There was no anticipated further distribution from the notes. Any reasonable person reading the notes would conclude that this was no more than a series of commercial loans secured by real estate and personal property. Nothing would indicate to the public that this arrangement was an investment vehicle. Any risk of non-payment is addressed by collateralizing the loan. In short, the notes were commercial, rather than investment, in character.[3] Accordingly, Mr. Bagga's request as to Count I will be denied.

*RICO Conspiracy
and Sant Properties*

Defendant Sant Properties (Sant) maintains that summary judgment should be granted in its favor as to Count II. That claim alleges Sant, along with all of the other defendants, conspired to violate the RICO statute. Defendants' Br. 15-16. Plaintiffs respond that they have offered evidence implicating Sant Properties in the conspiracy. Plaintiffs' Br. 12-14.

RICO § 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." A defendant,

---

[3] This ruling moots the Defendants' claim that no injury can be proven because the resulting harm derived solely from securities law violations. *See* Defendants' Br. 12-14.

8

however, need not have personally violated any of these predicate subsections in order to be liable under (d), because "one who opts into or participates in a conspiracy is liable for the acts of his co-conspirators which violate section 1962(c) even if the defendant did not personally agree to do, or to conspire with respect to, *any* particular element." *Smith v. Berg,* 247 F.3d 532, 537 (3d Cir.2001). Further, "a defendant may be held liable for conspiracy to violate section 1962(c) if he knowingly agrees to facilitate a scheme which includes the operation or management of a RICO enterprise." *Id.* at 538.

Here, Plaintiffs have established a genuine issue of material fact as to whether Sant conspired to violate RICO § 1962(c). The alleged conspiracy involves, inter alia, money laundering. Paragraph 96(b)(i) alleges Sant's participation in the funneling of the original Captec loan proceeds from the Debtor and into the hands of entities such as Sant. As proof, Plaintiffs offer a cancelled check dated December 2002. Plaintiffs' Ex.11. This check is drawn on an account in the name of United Management and is payable to Sant Properties in the amount of $112,000. Standing alone, the check might not necessarily require an untoward inference: the Court cannot tell if United and Sant were in privity or if the transfer was simply gratuitous. However, that is not all that there is to the record. Plaintiffs offer the testimony of Mr. Teitelman, counsel for the Bagga companies. In his deposition, he stated that "there was no loan made by Sant Properties to any Bagga business in October 2000." Plaintiff's Ex.10. Taken as true, this testimony would lend plausibility to the claim that the check was conveyed fraudulently. If no privity existed, the acceptance of a check for that amount of money from United Management is clearly suspicious. An innocent person would surely first

ask why it was being given those funds before accepting them.  More importantly, they would inquire as to the source of the funds.  Yet nothing like that evidence is offered by Sant in the way of explanation.  The claim of money laundering against Sant is supported by credible evidence which necessitates a trial.[4]

*RICO Conspiracy
and Injury*

Sant's second argument as to the conspiracy count is that there is no proof of resulting injury.  Defendants' Brief, 12-16.  In support of its position, it refers to this Court's March 2009 Opinion.  There, the Court observed that no injury was alleged to have resulted from the filing of the fraudulent bankruptcy claim.  Defendants' Br. 16 citing *In Jamuna Real Estate, LLC*, 416 B.R at 431.  Plaintiffs offer no proof of injury resulting from the filing of that claim at this time.  Defendants make no mention, however, of the harm resulting from Sant's acceptance of the funds transferred from United Management.   To the Court, the acceptance of plausibly laundered funds demonstrates resulting injury.  Assuming the validity of Plaintiffs' proof, that money rightfully belonged to FL Trust.  To date, Plaintiffs have received no payment whatever on these loans.  The record, accordingly, does demonstrate the existence of injury resulting from Sant's alleged conspiracy with Mr. Bagga and his companies.

---

[4]The Court is aware that the question is not settled as a result of the check and the Teitelman testimony.  Reading further on in his deposition, there is the suggestion at least of privity as between Sant and the Bagga companies in a related context.  It is rather vague, however, and appears to involve the Chawla Companies dealings with Hudson Bank and Hardeep Chawla's guarantee of a debt.  Because it raises more questions than it offers answers, the question of Sant Property's alleged agreement to money launder remains a triable issue of fact.

10

*Waiver*

Mr. Bagga's next argument is that the Plaintiffs have waived the fraud cause of action in Count IV of the SAC. They contend that this claim first appeared in the District Court complaint filed in 2003, but was omitted when the Plaintiffs amended that complaint in 2004. An amended pleading, they argue, supercedes any prior complaint. Defendants' Br. 23. Plaintiff's response is that an amendment which drops a claim does not forever preclude reinstating that claim.

The Court agrees. An "[amendment has] the effect of a dismissal without prejudice. [It is] not a binding waiver of the claim." *Deeley v. Genesis Healthcare Corp.*, 2011 WL 1162204, at *2 n.3 (E.D.Pa. Mar. 25, 2011) citing *Haddock v. Nationwide Fin. Servs. Inc.,* 514 F.Supp.2d 267, 272–73 (D.Conn.2007) (finding plaintiff did not impliedly waive claim included in its original complaint but omitted from subsequent complaints); *see also Google, Inc. v. Affinity Engines, Inc.,* 2005 WL 2007888, at *7 (N.D.Cal. Aug.12, 2005) ("courts may allow a plaintiff to reallege a voluntarily withdrawn claim").

Although the amended complaint filed in the District Court dropped the fraud count, the adversary proceeding filed in Bankruptcy Court resurrected it. That claim appears in the first as well as the second amended complaint. Moreover, a waiver has been defined as the "intentional relinquishment or abandonment of a known right." *Tri-M Group, LLC v. Sharp*, 683 F.3d 406, 432 n.1 (3d Cir. 2011). To constitute a waiver of a legal right there must be a clear, unequivocal, and decisive act of the party with knowledge of such right and an evident purpose to surrender it. *Kingsly Compression, Inc. v. Mountain Oil & Gas, Inc.*, 2010 WL 4929076, at *6 (W.D.Pa.Nov. 30, 2010)

11

Nothing approaching that level of definitiveness as to why the fraud claim was dropped in the District Court has been offered. Accordingly, the Court finds that it was not waived.

*Timeliness of*
*Fraud Count*

Mr. Bagga's final challenge to the fraud and conspiracy to defraud count is based on claims of untimeliness. He maintains that both causes of action are subject to a two-year statute of limitations. The statute began to run, his argument goes, as of April 2001, or alternatively, December 20, 2002. *See* Defendants' Br. 17. The April date, it is explained, is when Mr. Bagga allegedly misinformed Captec as to why the loans could not be repaid. Captec's suspicions should have grown in December 2002, he adds, which is the date it took default judgments on the loans. *Id*. 18. Notwithstanding, Plaintiffs did not file suit until February 10, 2006. That, Mr. Bagga concludes, is well passed the applicable deadline.[5] The Plaintiffs' rejoinder is that this is not the first time that Mr. Bagga has heard of these claims. Accordingly, they argue, the fraud claim in the SAC related back for timeliness purposes.

The applicable rule of procedure provides that "[a]n amendment to a pleading

---

[5]The Defendants add that the fraud/conspiracy to defraud claim is not otherwise preserved by the applicable savings clause. That clause extends the time bar for one year where the action or proceeding is terminated. See 42 P.S. § 5535(a). The defendants imply that the case was somehow terminated after 2004 when the complaint was amended to delete the fraud count and before 2006 when the complaint was refiled with the fraud count in the Bankruptcy Court. The litigation, however, was never terminated during that time. Rather, bankruptcy intervened and the District Court had to determine to what extent the Bankruptcy Court would have jurisdiction over the claims in the complaint. It made such a ruling in January 2007 at which time the District Court litigation was terminated. Since 2006, the claims have been actively litigated in this Court. There was, then, no lapse in the prosecution of the claims.

relates back to the date of the original pleading when: ... (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." F.R.C.P. 15(c)(1)(B).[6] The Third Circuit has held that an amended complaint relates back when the "amendments ... restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading.... In essence, application of Rule 15(c) involves a search for a common core of operative facts in the two pleadings." *General Motors Corp. v. Schneider Logistics, Inc.,* 2008 WL 2785861 *5 (E.D.Pa.) *quoting Bensel v. Allied Pilots Ass'n,* 387 F.3d 298, 310 (3d Cir.2004). When determining whether a common core of operative facts exists, the court looks at "whether the opposing party has had fair notice of the general fact situation and legal theory upon which the amending party proceeds." *Id.* (citing *Michelsen v. Penney,* 135 F.2d 409, 416–17 (2d Cir.1943)).

Mr. Bagga cannot credibly maintain that the fraud allegations raised in this adversary proceeding come as a surprise. He was among the defendants against whom the fraudulent misrepresentation count was originally leveled in the District Court Action. *See* Def. Ex. H, 35. That count alleged the false representations that Bagga, along with the help of Mr. Chawla, made to Captec to obtain the loan proceeds. *Id.* ¶¶ 173-185. Although an amendment to that complaint would omit that count, the same fraud claims reappeared after the case was referred to and re-filed in the bankruptcy court. Count 9 of the adversary proceeding filed in this court is entitled fraud and makes the same allegations as appeared in the District Court action. This involved the

---

[6]Made applicable to adversary proceedings by B.R. 7015.

13

production of invoices and financial statements which both Mr. Bagga and Chawla knew to be false. *See* Adv. No. 06-126, ¶¶ 238-246. The adversary proceeding was amended and the fraud count was expanded to include conspiracy to commit fraud. The allegations supporting that claim, however, were essentially the same. *See* First Amended Complaint, ¶¶ 304-314. A second amendment to the adversary proceeding likewise did not change the basis for the fraud count. *See* SAC, ¶¶ 105-115. From the beginning of this litigation, claims of fraud arising out of Mr. Bagga initially deceiving Captec into making loans based on false information have been plainly plead. No claim of prejudice or surprise can be made by Mr. Bagga in having to defend that claim.[7]

The same should be said for the conspiracy to defraud allegations. While they did not appear in the District Court complaint, they are not materially different from the claims of fraud per se. The SAC highlights the collaboration of Messrs Bagga and Chawla in deceiving Captec. Similarly, the complaint in the District Court alleges a conspiracy as between the two toward the same end of obtaining the loans by misrepresentations. This, too, cannot come as a surprise to Mr. Bagga. For that reason, the claims in Count IV will be deemed timely filed.

*Timeliness of Fiduciary Breach
and Aiding/Abetting Counts*

Defendants consider the claims in Counts V through VIII to be time-barred as well. Those counts allege torts arising in a fiduciary relationship. A claim for breach of

---

[7]Indeed, the parties will recall that Mr. Chawla made this very same argument when challenging the First Amended Complaint. There, he was included as a defendant to Count IX (fraud and conspiracy to commit fraud). He challenged that count on timeliness grounds but was unsuccessful. The Court found that the fraud and conspiracy to defraud claim sufficiently related back in time to avoid staleness. *In re Jamuna Real Estate, LLC*, 416 B.R. 412, 432 (Bkrtcy.E.D.Pa.,2009)

fiduciary duty is subject to a two-year statute of limitations.  *Maillie v. Greater Delaware Valley Health Care Inc*., 156 Pa. Commw. 582, 590, 628 A.2d 528, 532 (1993).  The first three counts allege a breach of a fiduciary duty on either Mr. Bagga's part or on that of both Mr. and Mrs. Bagga.  Count VIII alleges that all Defendants (except Mr. Bagga) aided Mr. Bagga in his fiduciary failings.  Defendants maintain that as to all four claims, Plaintiffs were on notice of them as early as December 2002 but would not raise them until February 2006, well after the limitations period had run.  Defendants Br. 29-30.  For their part, Plaintiffs maintain that the allegations underlying all of the fiduciary claims are alleged in the District Court complaint; therefore, these four counts relate back in time to the filing of that earlier action.  Plaintiffs' Br. 18-20

      The Court finds that the record supports the Defendants' argument.  The breach of fiduciary counts and the fiduciary aiding and abetting count were not pleaded prior to February 2006.  In and of itself, however, the fact that the District Court action, even as amended, did not plead those counts is not necessarily fatal for limitations purposes.  To the extent that the District Court action plead the same allegations which would support these new counts, then the new counts would relate back in time.  The Court has reviewed the District Court Complaint to that end, but agrees that it did not put Defendants on notice of those particular claims.  Some allegations hint at fiduciary misconduct, e.g, that the Baggas skimmed receipts from the Debtor's restaurants and that they ignored corporate formalities; however, they are incomplete.  The Court does not find this surprising given that the thrust of the District Court complaint is toward fraud and how that fraud was perpetrated upon the lender.  Breach of fiduciary duty claims are typically raised by shareholders, although they may extent to lenders where

insolvency is established. Indeed, It would not be until the bankruptcies were filed and the respective trustees were joined as plaintiffs that the fiduciary claims were raised. It requires an unduly broad reading of the District Court complaint to draw conclusions that *qua* fiduciary Mr. Bagga violated his duties.

Likewise, the operative facts supporting a breach of fiduciary duty claim are distinct from those demonstrating fraud. The fraud claim is supported by the allegations in ¶¶ 106 to 115 of the SAC. They detail the loan origination, the submission of invoices and financial statements, the false representations regarding the purpose of the loan, and the failure to disclose the real purpose behind what the Baggas would do with the loan proceeds. Supporting the breach of fiduciary duty claims is a different set of facts: they involve misappropriating the loan proceeds, funneling the money to family members and their entities, and stripping assets from otherwise viable businesses. Both may have their genesis in the original scheme as hatched, but the two sets of allegations describe distinctly different conduct. Moreover, they differ in terms of time as well. The fraud allegations involve the time in which Bagga applied for the loan, submitted allegedly false documentation with the help of Chawla and ultimately obtained the loan proceeds. The fiduciary breach claims involve acts which occurred after that point. The self-dealing charge involves the use of the loan proceeds for personal benefit when it was supposed to pay for restaurants and equipment. The failure to preserve entity property count alleges that Baggas diverted the loan proceeds to the Chawlas instead of financing the capital needs of the Debtor companies. The Defendants allegedly deepened the insolvent state of the Debtor by diverting the loan proceeds and failing to pay back those loans. The aiding and abetting claims

necessarily must have occurred when Bagga was breaching these fiduciary duties. The point is that all of these transgressions occurred after the loan proceeds were wrongly obtained. In sum, the differences between the facts supporting the fraud claims and the fiduciary claims are such that the Court finds that latter set of claims must stand on their own for limitations purposes. Finding that they do not, the Court holds that they are time-barred.

*Summary*

The motion for partial summary judgment will be granted in part and denied in part as previously described in the beginning section of this opinion.

An appropriate Order follows.

By the Court:

_____
Stephen Raslavich
Chief United States Bankruptcy Judge

Dated:  November 23, 2011